## OLE A. MOE, JR. v. WAYNE ALSOP.

180 N. W. (2d) 255.

September 25, 1970—No. 42706.

324

*Powell & Dessert* and *Phillip D. Nelson,* for petitioner.
*Douglas W. Cann,* County Attorney, for respondent.
*Whitney E. Tarutis,* for Gladys Baker Swanson.

PETERSON, JUSTICE.

This opinion confirms the order of the writer, made on August 31, 1970, directing the respondent auditor of Beltrami County to refrain and desist from placing the name of Gladys Baker Swanson upon the September 15, 1970, nonpartisan primary election ballot as a candidate for election to the office of state representative, Legislative District 64A.

The matter comes to this court, as a matter of original jurisdiction, pursuant to Minn. St. 203.38, which in relevant part provides:

"Subdivision 1.   When it shall appear by affidavit to any judge of the supreme court in the case of a state election, or of the district court of the proper county in the case of a county election:

"(a)   That an error or omission in the placing or printing of the name or description of any candidate on official primary or general election ballots has occurred or is about to occur; or

"(b)   That any other error in preparing or printing the ballots has occurred or is about to occur; * * *

\* \* \* \* \*

then the judge immediately shall order the officer, person, or board charged with the error, wrong, neglect, or failure to correct the same or perform the duty forthwith or show why he should not do so. Failure to obey the order is contempt of court."

Our jurisdiction, which is not contested, was duly invoked by the application of Ole A. Moe, Jr., a person qualified to vote in the legislative district.[1] The application and supporting affidavit stated that "Gladys Baker Swanson fails to meet the qualifications for the office of State Representative, Legislative District 64A as provided by the Constitution of the State of Minnesota, Article 4, Section 25, in that she shall not have resided six months immediately preceding the election in Legislative District 64A." An order to show cause was issued by the Chief Justice, directed to the respondent auditor, pursuant to § 203.38, returnable on August 24, 1970. Respondent auditor by affidavit disclosed that Gladys Baker Swanson had filed her "Affidavit of Candidate for Nomination Without Party Designation" and paid the required filing fee on July 13, 1970, but otherwise disclaimed interest. Gladys Baker Swanson, who was served as the interested party, filed a responsive affidavit on August 24, 1970, asserting that she had resided in Bemidji, Minnesota, within the legislative district, since March 19, 1970. The Honorable James F. Murphy was appointed referee by this court on August 24 to take evidence on the issue of fact raised by the conflicting affidavits of petitioner and Gladys Baker Swanson. After a hearing before the referee on August 26, at which all three parties were represented by counsel, Judge Murphy promptly returned his findings of fact and a report of the evidence taken.

The legal issue, as it emerges from the petition and the evidence, is whether a candidate for the office of state representative or state senator who would not be constitutionally eligible to hold that office if nominated in the primary election *and* elected in the general election may be denied placement upon the

---

[1] Petitioner's supporting affidavit that he is "an eligible voter and elector" of Legislative District 64A is uncontroverted. An elector has a sufficient interest in the election to raise the issue presented in this case. State ex rel. Sauer v. District Court, 74 Minn. 177, 178, 77 N. W. 28, 29. So also, of course, would an eligible candidate for the same office. State ex rel. Olson v. Scott, 105 Minn. 513, 516, 117 N. W. 845, 1044, 1045.

primary election ballot by judicial order pursuant to Minn. St. 203.38. Confirming our original order, we hold in the affirmative.

The controlling test of eligibility for state legislative office is stated in Minn. Const. art. 4, § 25:

"Senators and representatives shall be qualified voters of the State, and *shall have resided* one year in the State and *six months immediately preceding the election in the district from which they are elected.*" (Italics supplied.)

The constitutionally required 6 months' residence immediately preceding the "election" relates only to the general election, not the primary election.[2] Touhey v. Donovan, 259 Minn. 63, 65, 105 N. W. (2d) 849, 850.

---

[2] A less definitive requirement of residence for purposes of primary elections is contained in Minn. St. 202.04, which provides in relevant part: "Subdivision 1. Not more than 70 nor less than 56 days before the primary election any eligible person who desires to have his name placed on the primary ballot as a candidate for any elective office to be filled at the general election, except presidential electors, shall file his affidavit with the secretary of state when to be voted for in more than one county, and with the county auditor when to be voted for in a single county stating the following:

"(a) That he is a qualified voter in the subdivision where he seeks nomination."

A "qualified voter" is relevantly defined in Minn. Const. art. 7: "Section 1. Every person of the age of twenty-one years or more who has been a citizen of the United States for three months and who has resided in this state six months and in the precinct for thirty days next preceding an election shall be entitled to vote in that precinct, and the place of voting by one otherwise qualified who has changed his residence within thirty days preceding the election may be prescribed by law.

* * * * *

"Sec. 7. Every person who by the provisions of this article shall be entitled to vote at any election shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as

It is clear, as a matter of fact, that Gladys Baker Swanson will not have resided within Legislative District 64A for 6 months *immediately* preceding the general election on November 3, 1970.[3] Although she did at one time reside at Solway, Beltrami County (which is within Legislative District 64A), the evidence conclusively establishes that as of both July 13, 1970, the date of filing for the legislative office, and August 26, 1970, the date of the hearing before the referee, she resided at Shevlin, Clearwater County (which is outside that legislative district). See, Minn. St. 2.671 and 2.681. The referee fixed the time of change in her residence as "the middle of June, 1970."[4] Although the

---

otherwise provided in this Constitution, or the Constitution and law of the United States."

No issue is presented as to Gladys Baker Swanson's eligibility to be a candidate for nomination in the primary election *under the terms of Minn. St. 202.04.* It may be observed that the legislature has power reasonably and fairly to condition primary elections, Touhey v. Donovan, 259 Minn. 63, 105 N. W. (2d) 849, subject, however, to overriding constitutional conditions. It may be observed, too, that constitutional eligibility *to vote* might be timely established as of the general election, a distinctly different matter than constitutional eligibility *to be elected* to legislative office at the general election. We intimate no view as to the construction of § 202.04 and do not base decision on that statutory ground.

[3] Dates for primary and general elections are determined by Minn. St. 202.02 and 203.02 respectively.

[4] Her filing affidavit stated that she resided at Solway and that she was a qualified voter in the state and "in the political subdivision throughout which candidates for said office are to be voted for at the next ensuing general election." However, her affidavit responsive to petitioner's application states that she had resided at 319 1/2 Minnesota Avenue, Bemidji, Minnesota, since March 19, 1970. Her responsive affidavit is patently contrary to her filing affidavit. The referee found that "there is no credible evidence to indicate that she at any time acquired a residence at [the Bemidji] address." On June 9, 1970, she executed a change of address order at the Solway post office, giving notice of a permanent change of address, effective June 9, 1970, from Route 1, Solway, to P. O. Box 403, Shevlin. On June 17, 1970, as the referee found,

referee disclaimed the existence of evidence to indicate whether or not she may have been a resident for 6 months previous to the general election, a finding that she would not be is inescapable from the recited evidence and findings.[5]

The statutory role of this court in determining the right of a person to be a candidate for nomination in an election for state legislative office is not as clear as we would wish.[6] Minn. Const. art. 4, § 3, provides: "Each house [of the legislature] shall be the judge of the election returns and eligibility of its own members; * * *." We conclude, for two reasons, that the legislature, by the enactment of Minn. St. 203.38, intended that this court should rule upon the eligibility of a candidate for nomination

she sold her residence property at Solway and changed her residence to Shevlin, "either at said time or shortly thereafter." We observe from our files that respondent auditor's affidavit of service upon her of a copy of his responsive affidavit, dated August 13, 1970, states that she was personally served "at the Village of Shevlin, in the County of Clearwater."

[5] The able referee may have overlooked the constitutional requirement that the 6 months' residence must "immediately" precede the general election. A statement in her responsive affidavit that "she has been and is a resident residing in Beltrami County, Minnesota, ever since September 8, 1951" was, except as to the crucial period of time from and after the middle of June 1970, uncontroverted. The prior residence, however, is constitutionally irrelevant.

[6] The role of the county auditor or secretary of state with respect to an administrative determination of the residential qualification of a candidate is likewise unclear. We understand that these filing officials accept statements of residence in affidavits of candidacy at face value, which is probably necessary as a matter of practical expediency. Even though their role might be arguably different in a situation where the affidavit of candidacy on its face would disclose a lack of requisite residence, a different rule nevertheless would impose a great administrative burden upon the filing official. Legislative districts in the most populous counties are complicated in descriptions, consisting of a series of precincts in various wards of a large city; and even in less populous counties, the district may consist of something less than an entire county.

at the primary election. First, § 203.38 has existed in relevant substance for more than 50 years.[7] And for more than 30 years this court has assumed that the ineligibility of a candidate for legislative office because of nonresidence in the legislative district constitutes "an error or omission" to be corrected by judicial order. In State ex rel. McGrath v. Erickson, 203 Minn. 390, 281 N. W. 366, we acted upon an application for an order directing a county auditor to refrain from placing the name of a candidate for the office of state senator on an election ballot because of such constitutional ineligibility to hold the office, stating (203 Minn. 391, 281 N. W. 366):

"* * * [I]t may be conceded that in respect to primary election ballots courts, in virtue of § 316 of the statutes,[8] may strike the name of a candidate from the ballots who is not a resident of the legislative election district wherein he has filed."[9]

---

[7] R. L. 1905, § 202, provided: "Whenever it shall be made to appear by affidavit to any judge of the supreme court, or of the district court of the proper county, that an error or omission has occurred or is about to occur in the placing of any name on an official primary election ballot, that any error has been or is about to be committed in printing such ballot, or that any wrongful act has been or is about to be done by any judge or clerk of a primary election, county auditor, canvassing board, member thereof, or other person charged with any duty concerning the primary election, or that any neglect of duty has occurred, or is about to occur, such judge shall order the officer or person charged with such error, wrong, or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty, or forthwith show cause why he should not do so. Failure to obey the order of such judge shall be contempt of court."

[8] Section 316 [Mason St. 1940 Supp. § 601-3(1)g] is, with an exception here not relevant, virtually identical to § 203.38.

[9] The issue in that case, however, related to general election ballots. This court denied the application on the ground that the issue of eligibility, once a successful candidate at the primary election had received a proper certificate of nomination, was exclusively for the legislature to decide. The holding, to that extent, overruled State ex rel. Beck v.

The enactment of § 203.38, considered in that historical context, is strong evidence of legislative intent.

We think, second, that the legislature intended such construction as a matter of legislative necessity. If a person ineligible to hold the office of state representative were nominated at the primary election and elected at the general election, without any provision for judicial intervention, it would be necessary for the House of Representatives itself, burdened as it is by other legislative matters in a short legislative session, to conduct its own hearings and make its own decision. If the House of Representatives decided that the successful candidate was ineligible to hold the office, a vacancy would exist in that office. Quite apart from the expense of any special election, the residents of the legislative district would be without representation for at least a substantial portion of the actual legislative session or, if the legislature were not then in session, for the whole of the legislative term of office.[10] See, Minn. St. 203.44 to 203.56.

An application for an order preventing the placement of a candidate's name upon an election ballot for any office must be timely made and clearly established.[11] The burden upon the applicant to establish ineligibility must be a heavy one in view of the drastic nature of an affirmative order, both to the candidate

---

Erickson, 175 Minn. 393, 221 N. W. 245, which 10 years earlier had considered the counterpart of § 203.38 to apply to general election ballots. Unless the legislature amends the statute, we shall adhere to the McGrath construction of the statute.

[10] These adverse consequences would not occur, of course, if the candidate failed either to be nominated or elected. To hold that the application should for that reason be denied as "premature" would effectively foreclose any application under the statute.

[11] This requirement is particularly appropriate in the case of candidacy for legislative office in view of the safeguard of ultimate determination by the legislature if this court declines to act. Other considera-

and to the electorate. An applicant for the order must proceed promptly in view of the inherent limitations upon adequate judicial consideration. An applicant's opportunity to initiate proceedings occurs at least from the close of filings for the primary election and the 6 days thereafter in which a candidate may withdraw. See, Minn. St. 202.04 and 202.06. An affirmative order of this court must ordinarily be made not later than 2 weeks before the primary election so that the auditor may discharge his duty of printing and posting sample ballots during that time. See, § 203.34. The intervening time is short in which to hear and determine contested issues of fact and to have appropriate briefs submitted to the court.[12]

Order to show cause. made absolute.

---

tions may be present in the situation of candidacy for other offices where the power of corrective action is vested solely in the courts.

[12] Although the application in this case might have been more timely made, a highly competent referee was available on short notice and was able to schedule and conduct a hearing with extraordinary dispatch. The petitioner filed a brief, but Gladys Baker Swanson did not. The time for consideration of the important issue was manifestly most limited.