**Carol WEILER, Petitioner,**

v.

**Mark RITCHIE, Minnesota Secretary of State, Respondent,**

**Dan "Doc" Severson, Intervenor–Respondent.**

**No. A10–1120.**

Supreme Court of Minnesota.

Sept. 30, 2010.

Alan W. Weinblatt, Weinblatt & Gaylord, PLC, St. Paul, MN, for petitioner.

Lori Swanson, Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for respondent.

David W. Asp, R. Reid LeBeau II, Matthew R. Salzwedel, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for intervenor-respondent.

## OPINION

PER CURIAM.

This case raises a challenge under Minn. Stat. § 204B.44 (2008) to the name by which a candidate for Minnesota Secretary of State seeks to appear on the 2010 general election ballot. On May 25, 2010, Daniel Mark Severson filed an affidavit of candidacy as the Republican-endorsed candidate for Minnesota Secretary of State. The affidavit of candidacy requires the candidate to state his name "as it will appear on the ballot" and requires the candidate to state that "this is my true name or the name by which I am generally known in the community." Severson listed his name on the affidavit of candidacy as "Dan 'Doc' Severson."

On June 29, 2010, petitioner Carol Weiler petitioned our court for an order requiring the Minnesota Secretary of State to omit the word "Doc" from Severson's name on the general election ballot, on grounds that "Doc" is not the name by which Severson is commonly and generally known in the community. Severson intervened in the matter and filed a response in opposition to the petition. The court also received a response to the petition from the Secretary of State, who took no position on the merits.[1] Petitioner Weiler filed a reply in support of her petition. None of the parties identified any disputed facts, nor did any party request an evidentiary hearing before a referee to resolve any issues of material fact. The court heard oral argument on August 11, 2010. So as not to impede the orderly administration of the general election, the court issued an order on August 16, 2010, granting the petition, with this opinion to follow.

The undisputed facts of the matter are as follows. In 1983, while training to be a Navy pilot, Severson was assigned the "call sign" "Doc" by others in his squadron. Severson went by the name "Doc" during his Navy service and continues to be known as "Doc" among those with whom he served. Severson provided five identical affidavits, each by a Minnesota resident, who "know that Dan Severson's nick-name/call sign is 'Doc.'" The record also contains an affidavit signed by two residents of Avon, Minnesota, who aver that they have known Severson for 10 years, and that he has "been 'Doc' the entire time" they have known him. Sever-

---

1. The response stated that because he is also a candidate for Secretary of State, Secretary of State Mark Ritchie recused himself from participation in the case and delegated responsibility for coordinating the response to the Deputy Secretary of State.

son also has been referred to as "Doc" by his in-laws for some 27 years.

Severson is currently the Minnesota State Representative for District 14A and was first elected to the Minnesota House in 2002. Severson considered using the nickname "Doc" during his 2002 campaign for State Representative but rejected the idea as "too informal" for a first run for office. Severson's opponents for State Representative in the 2004 and 2008 elections never observed Severson refer to himself as "Doc" at any campaign event or in any campaign materials. Each also attests that he never heard anyone else refer to Severson as "Doc" during those campaigns. Severson's 2006 and 2008 affidavits of candidacy for State Representative each list him as "Dan" Severson. Severson's Minnesota Campaign Finance and Public Disclosure Board filings for each of Severson's four legislative campaigns list the candidate's name as "Daniel M. Severson." Severson's campaign website for Secretary of State (until after the filing of his affidavit of candidacy) and Severson's official legislative website each list him as "Dan" Severson. Severson has registered to vote under the name "Daniel Mark Severson" since 2002.

A legislative chaplain has called Severson "Doc" since meeting him in 2003 and noticing that some of the Navy photos in Severson's office at the Capitol have the name "Doc" written on them. State Representative Mark Murdock has also called Severson "Doc" many times over the past two years. But the chair of the Committee on Housing Finance and Policy and Public Health Finance, on which Severson is the ranking Republican member, cannot recall Severson ever referring to himself as "Doc" or being referred to as "Doc" by anyone else in her presence. In addition, in his three terms, the representative of Minnesota House District 14B, immediate-

ly adjacent to Severson's District 14A, never heard Severson refer to himself as "Doc" and never heard anyone else refer to Severson as "Doc." Severson has published recent editorials in the *Minneapolis Star Tribune* and the *St. Cloud Times* as "Dan Severson." Severson submitted one editorial using "Doc," but that editorial was submitted after he filed his affidavit of candidacy for Secretary of State.

## I.

■ As a threshold matter, the parties dispute which party has the burden of proof and they dispute what standard of proof applies. This case comes to us as a ballot challenge under Minn.Stat. § 204B.44 ("Any individual may file a petition . . . for the correction of . . . (a) an error . . . in the . . . printing of the name . . . of any candidate . . . on any official ballot."). We have recognized that the burden of proof in such a challenge rests with the petitioner to demonstrate the error the petitioner seeks to have corrected. *See, e.g., Lundquist v. Leonard,* 652 N.W.2d 33, 36 (Minn.2002); *Olson v. Zuehlke,* 652 N.W.2d 37, 40 (Minn.2002). While petitioner suggests that Severson should have the burden of proof, she offers no sound basis for us to depart from our precedent and we decline to do so. *See State v. Losh,* 755 N.W.2d 736, 747 (Minn. 2008) (noting that "we can depart from our own precedent when there are compelling reasons to do so"). We therefore hold, consistent with our precedent, that petitioner bears the burden of proof in this case.

Our precedent has termed the burden of proof that a petitioner bears in a ballot challenge to be a "heavy one." *Moe v. Alsop,* 288 Minn. 323, 330–31, 180 N.W.2d 255, 260 (1970). The parties dispute whether the standard of proof articulated in *Moe* should apply here. Severson urges

us to apply that standard in this case. But petitioner contends that the standard of proof should be a preponderance of the evidence. We agree with petitioner.

In *Moe*, the relief requested would have prevented the "placement of a candidate's name upon an election ballot," and we said that such an error must be "clearly established." *Id.* at 330, 180 N.W.2d at 260. This rigorous standard was particularly appropriate for court challenges to eligibility of candidates for legislative office, because the Legislature ultimately decides eligibility of its members. *Id.* at 330 n. 11, 180 N.W.2d at 260 n. 11. In this case, by contrast, petitioner does not seek to prevent Severson from appearing on the ballot. This case is about a narrower question: that is how Severson's name should appear.

Moreover, we have recognized that where the Legislature does not provide a standard of proof "for statutorily-created causes of action," this silence reflects " 'a signal that the legislature intended the preponderance of the evidence standard' to apply." *C.O. v. Doe*, 757 N.W.2d 343, 353 (Minn.2008) (quoting *State v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993)). The Legislature did not provide a standard of proof in section 204B.44.

Because petitioner's challenge does not contest Severson's eligibility to appear on the ballot, but only the manner in which his name should appear, and because the Legislature has not specified a standard of proof in the relevant statute, we hold that the preponderance of the evidence standard applies.

## II.

We turn next to the merits and examine whether petitioner has demonstrated, by a preponderance of the evidence, that it would be an error to list Severson's name on the ballot as "Dan 'Doc' Severson." Minnesota Statutes § 204B.06, subd. 1 (2008), prescribes the information required on an affidavit of candidacy. The statute requires that the affidavit include a statement that the name written on the affidavit as it is to appear on the ballot "is the candidate's true name or *the name by which the candidate is commonly and generally known in the community.*" [2] *Id.* (emphasis added). Although the parties do not dispute the particular facts the other presents, they do dispute whether those facts satisfy the statutory standard of "commonly and generally known in the community."

Petitioner argues the statutory authorization for use of an alternate name has a narrow scope, as demonstrated by the Legislature's use of the phrase "the name" by which the candidate is known. According to petitioner, the statutory authorization to use one's "true name or *the* name by which the candidate is commonly and generally known in the community" means that a candidate can have only one alternate name. She argues that because Severson's true name is Daniel Severson, "Dan" Severson—the name Severson used in previous legislative campaigns—is "the" alternate name by which Severson is known and the only alternate name the statute authorizes Severson to use on the ballot in this election. Petitioner contends that the statute is not intended to allow a candidate to create a new identity for the election, or to use a nickname on the ballot in order to build a statewide "brand" for himself.

**2.** In this opinion we refer to this language that allows the use of "the name by which the candidate is commonly and generally known in the community," instead of the candidate's true name, as the "alternate name" provision.

Petitioner further argues that the documentary evidence she submitted establishes that Severson is not commonly and generally known in the community as "Doc." Petitioner argues that in the face of this evidence, the commonly-and-generally-known-in-the-community standard cannot be satisfied through affidavits of a handful of associates who know Severson by his Navy call sign and (what petitioner characterizes as) Severson's self-serving affidavit.

Severson counters that section 204B.06, subdivision 1, does not establish a rigorous standard for the use of an alternate name on the ballot. Severson contends that the statute does not require that the candidate demonstrate his own "use" of the alternate name, but only that others "know" him by the name. Severson further contends that the relevant community among which the candidate must be "known" by the alternate name is the candidate's friends, co-workers, and those that "surround" the candidate, although he argues his evidence is sufficient to show he is known as "Doc" statewide. Severson argues that the record before the court establishes that he meets the statutory standard because "Doc" is "a name" by which he is commonly known across the state.

## A.

■ The parties' arguments require that we first determine what the Legislature meant by "commonly and generally known in the community" in section 204B.06, subdivision 1, and what evidence demonstrates that the standard has been met. Our goal in all statutory interpretation is to ascertain the intent of the Legislature. Minn.Stat. § 645.16 (2008); *see, e.g., Jones v. Borchardt,* 775 N.W.2d 646, 647–48 (Minn.2009). We start with the language of the statute and the Legislature's directive that "words and phrases are construed ... according to their common and approved usage." Minn.Stat. § 645.08(1) (2008).

The Legislature did not define the phrase "commonly and generally known in the community" or any of its terms. But the statutory language requires, first, that the alternate name is one by which the candidate is not just known, but one by which the candidate is "commonly and generally" known. The term "common," the adjectival root of the adverb "commonly," is defined as "[w]idespread; prevalent." *The American Heritage Dictionary of the English Language* 381 (3d ed.1996). The term "generally" is defined as "[p]opularly; widely." *Id.* at 755. These definitions for the statutory terms demonstrate that the Legislature intended to require more than limited or incidental knowledge by the alternate name. Rather, the ordinary meanings of the terms "commonly" and "generally" indicate that the candidate must be known at least widely, and perhaps prevalently, by the alternate name he wants to use on the ballot.

The Legislature also prescribed the population among whom the candidate must be commonly and generally known by the alternate name—specifically, "the community." "Community" is defined as "[a] group of people living in the same locality and under the same government," and also as "[s]ociety as a whole; the public." *Id.* at 383. In requiring knowledge of the candidate by the alternate name "in the community," the Legislature emphasized the breadth of knowledge already conveyed in the "commonly and generally" requirement by specifying a more general population where that knowledge must be found that is not limited to just relatives, friends, and perhaps even co-workers, as Severson contends. In this context the "common and ordinary" meaning of "in the community" would be the community at

large—denoting a requirement of public rather than private knowledge of the candidate by the alternate name.[3]

The requirement is also stated in the present tense—"the name by which the candidate *is* commonly and generally known in the community." Minn.Stat. § 204B.06, subd. 1 (emphasis added). This means the alternate name must be a name by which the candidate is presently known, rather than a name by which the candidate was known only in the past or by which the candidate seeks to become known in the future—as in an upcoming election.

■ Based on the common and ordinary meaning of the words the Legislature used, we conclude that the alternate name must be one that the candidate has routinely used, before he files his affidavit of candidacy, to identify himself to the public. The alternate name also must, at a minimum, be the name by which the candidate is broadly and widely known to members of the public before the candidate submits the affidavit of candidacy at issue. These requirements are not only compelled by the plain meaning of the words used in the statute, but they are also consistent with our application of a similar, but non-statutory, "commonly or generally known" standard in *Clifford v. Hoppe*, 357 N.W.2d 98 (Minn.1984), the apparent impetus for enactment of the alternative name provision in section 204B.06.[4]

In *Clifford*, the candidate was Shelvie Rettmann, who listed her name on the affidavit of candidacy for Congress as "Shelvie Prolife Rettmann." 357 N.W.2d at 99–100. Petitioner Clifford filed a petition in our court under section 204B.44 objecting to the candidate's use of the word "Prolife" on the ballot. We agreed with petitioner that being identified on the ballot as "Prolife" could give Rettmann an unfair advantage and explained that under

---

**3.** Severson argues that the community is made up of the candidate's friends, acquaintances, and those "surrounding" the candidate. To support this narrow interpretation of community, Severson refers to an Opinion of the Attorney General that stated the candidate was known by the nickname to "his friends." But the reference in the Opinion to the candidate's friends was merely a recitation of what the candidate stated. The Attorney General did not accept that as a standard for placement on the ballot. Rather, the Opinion explained that a nickname could be used on the ballot "if such name has been used as a part of said person's name for such a period of time that *he has become generally known* by such name. In other words, there is no legal objection to a person using a name by which he *has been commonly known* for a number of years, *if the purpose of using such name is merely to enable the voters to identify him.*" Op. Att'y Gen. No. 28–b–2, at 1–2 (Mar. 21, 1938) (emphasis added). Moreover, none of the Opinions of the Attorney General that applied a "commonly or generally known" standard to allow the use of a nickname on the ballot used the phrase "in the community." The Legislature added that ad-

ditional phrase when it prescribed the standard for use of an alternate name in section 204B.06, subdivision 1. *See* Act of Apr. 1, 1986, ch. 475, § 8, 1986 Minn. Laws 1093, 1095 (codified at Minn.Stat. § 204B.06, subd. 1).

For her part, petitioner argues that for a statewide race, the community at issue must be the entire state. We need not determine whether the community must be the entire state because the evidence establishes that Severson was not "commonly and generally known" as "Doc" to the public in the relevant community even if not defined as the entire state. *See infra* Part II.B.

**4.** In *Clifford*, we recognized that the Secretary of State lacked statutory authority to police the names submitted by candidates on their affidavits of candidacy and suggested that the Legislature require candidates to assert in their affidavits that the name they submitted to appear on the ballot was one by which they were commonly or generally known. 357 N.W.2d at 100 n. 3. The Legislature adopted the alternate name language in section 204B.06 two years later. Act of Apr. 1, 1986, ch. 475, § 8, 1986 Minn. Laws. 1093, 1095.

Minn.Stat. § 204B.35, subd. 2 (2008), a name providing an advantage could not appear on the ballot unless "otherwise provided by law." [5] *Clifford,* 357 N.W.2d at 101. We explained that the election statutes then provided only three circumstances in which words other than the true name of the candidate were allowed to appear on the ballot.[6] *Id.* In addition, we acknowledged a fourth circumstance, not found in statute, based on Opinions issued by the Minnesota Attorney General advising election officials that "if a candidate is commonly or generally known by a particular nickname, that nickname may be printed on the ballot for the purpose of identifying the candidate to voters." *Id.*

Rettmann conceded that none of the statutory provisions applied to her use of "Prolife," so we examined whether she could satisfy the "commonly or generally known" standard established in the Attorney General Opinions that allowed use of a nickname on the ballot. *Id.* We concluded that Rettmann was not commonly or generally known as "Prolife." *Id.* at 102.

Although we were not applying section 204B.06, our recitation in *Clifford* of the evidence that led to that conclusion is instructive on the question of what evidence is relevant to assessing the statutory standard in two respects. First, we considered use—or lack of use—of the alternate name, both by the candidate and by others. We noted evidence that the candidate had not used "Prolife" as part of her name on public documents, such as precinct documents, her voter registration card, and a real estate deed. 357 N.W.2d at 101. We also noted Rettmann's own admission that she had never been called "Prolife" before filing her affidavit of candidacy. *Id.* at 101–02. Our consideration of this evidence about non-use of the alternate name contradicts Severson's argument that a candidate's own "use" (or lack of use) of the alternate name is irrelevant as long as other people "know" of it.

Second, we considered when the alternate name was used. We rejected as irrelevant Rettmann's claim that she had been called "Prolife" after filing the affidavit of candidacy. We explained that "the issue is whether she was generally and commonly known by that nickname prior to and at the time of filing the affidavit of candidacy." *Id.* at 102 n. 5. Given that we were applying a standard similar to the statutory standard at issue in this case, we conclude that our discussion of the evidence relevant to that standard is helpful to the resolution of this case as well.

### B.

■ With these principles in mind, we turn to assessment of the evidence presented in this case to determine whether petitioner has demonstrated, by a preponderance of the evidence, that Severson is not "commonly and generally known in the community" as "Doc." Because the language selected by the Legislature to de-

---

**5.** Minnesota Statutes § 204B.35, subd. 2, provides in relevant part: "The name of a candidate shall not appear on a ballot in any way that gives the candidate an advantage over an opponent . . . except as otherwise provided by law."

**6.** A married or widowed woman could use "Mrs." followed by the name or initials of her husband or deceased husband. Minn.Stat. § 204B.05 (1986) (repealed 1987). Second, if there would be more than one candidate with the same or similar surname on the ballot for the same office, up to three words could be added to indicate a candidate's occupation, office, or residence. Minn.Stat. § 204B.38 (2008). Third, the name of a candidate for partisan office not seeking the nomination of a major party could be followed on the ballot by a statement of her political party or political principle. Minn.Stat. § 204B.07, subd. 1(c) (2008).

scribe the circumstances in which an alternate name is allowed on the ballot requires broad and widespread knowledge of the candidate by the alternate name in the community, we assess how the candidate has presented himself to the public, much as we looked at the name Rettmann used on public documents in *Clifford. See* 357 N.W.2d at 101–02.

The evidence here is as follows. Severson ran for the State Legislature as "Dan," not "Doc," in the four previous elections. While section 204B.06 incorporates a present tense standard, how a candidate for public office has described himself to the public in the recent past can inform how that candidate is presently commonly and generally known. In publicly filed documents, such as his voter registration and filings with the Campaign Finance and Public Disclosure Board, Severson has used "Dan" or "Daniel," not "Doc." The Legislature's website identifies Severson as "Dan," not "Doc." In editorial articles he submitted to area newspapers prior to filing his affidavit of candidacy, Severson identified himself as "Dan," not "Doc." Finally, until after the filing of his affidavit of candidacy, Severson's campaign website for Secretary of State identified him as "Dan," not "Doc." This evidence demonstrates that at least until he filed his affidavit of candidacy for Secretary of State, Severson predominantly identified himself to the public—that is, the community—as "Dan" or "Daniel," not "Doc."

On the other hand, the evidence presented by Severson establishes that, unlike the candidate in *Clifford,* Severson did not recently create the alternate name he wants to use on the ballot. The evidence demonstrates that Severson became known as "Doc" as a Navy pilot some 27 years ago. That evidence negates petitioner's allegation that Severson made up the name for this election. Nevertheless, because the

commonly-and-generally-known-in-the-community requirement is written in the present tense, evidence from the distant past is of little relevance. Rather, evidence of how the candidate is known at the time of filing the affidavit of candidacy is most relevant. *See Clifford,* 357 N.W.2d at 102 n. 5. Accordingly, Severson's evidence that he was known as "Doc" in the Navy provides little support for use of that name on the ballot at this time. In addition, much of Severson's evidence concerning use of "Doc" in the Navy, and even more recently by his Navy colleagues, comes from people outside Minnesota. But the "in the community" aspect of the statutory standard refers to a *Minnesota* community, no matter how narrowly or broadly "community" otherwise might be defined.

Severson has also produced affidavits of a legislative chaplain and two legislative colleagues who aver that they know him and refer to him as "Doc." This evidence of use in the legislative environment is inconclusive, however, in light of the identification of Severson as "Dan" on the Legislature's website and the affidavits from the chair of the legislative committee on which Severson is the ranking Republican member and from Severson's colleague from the adjoining legislative district, who both state that they have never heard Severson called "Doc" or refer to himself as "Doc." Severson has also presented affidavits of some relatives and acquaintances who aver that they know him and refer to him as "Doc." In addition, he has presented identical affidavits from several individuals, who live in various parts of the state, indicating that they know Dan Severson and know that his nickname/call sign is "Doc." But these affiants do not aver that they call Severson "Doc" or have heard him refer to himself as "Doc."

Although the evidence establishes that Severson has been and remains known to some people as "Doc," the uncontroverted evidence convincingly establishes that for at least the past eight years, up to the filing of the affidavit of candidacy at issue here, Severson presented himself to government officials with whom he has filed official documents, to the voters in his legislative campaigns, and to the public generally, as "Dan" or "Daniel," not as "Doc." We conclude on this evidence that petitioner has demonstrated by a preponderance of the evidence that Severson does not satisfy the statutory requirement that he is "commonly and generally known in the community" as "Doc." Rather than being commonly and generally known as "Doc," the weight of the evidence establishes that Severson is commonly and generally known in the community as "Dan" or "Daniel." *See Aubin v. Duluth St. Ry. Co.,* 169 Minn. 342, 348, 211 N.W. 580, 583 (1926) ("Preponderance means to outweigh; to weigh more; to overcome."). Accordingly, we hold that Severson does not qualify under section 204B.06, subdivision 1, to use "Doc" on the general election ballot.

■ Disallowing use of the alternate name "Doc" on the ballot in these circumstances is not only consistent with the language of the statute, it also conforms to the proper function of the ballot and, importantly, the purpose of providing candidate information on the ballot. The Legislature prescribed in Minn.Stat. § 204B.35, subd. 2: "Ballots shall be prepared in a manner that *enables the voters to understand* which questions are to be voted upon and *the identity* and number *of candidates to be voted for in each office* and to designate their choices easily and accurately." (Emphasis added.) Consistent with this language, the ballot itself and the candidate information on the ballot are intended to assist the voter in identifying "easily and accurately" the candidates for whom they wish to vote. The purpose of the ballot is not to provide a forum for candidates to campaign or advertise. *See Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 365, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997) ("Whether or not the putative 'fusion' candidates' names appeared on one or four ballot lines, such maneuvering would undermine the ballot's purpose by transforming it from a means of choosing candidates to a billboard for political advertising.").

■ Our cases also demonstrate that the purpose served by the candidate information allowed on the ballot is to enable the voter to identify the candidate, rather than to serve the candidate's purposes. For example, describing a similarly worded predecessor to section 204B.35, subd. 2, we stated: "[T]his statutory provision is a clear legislative mandate to have the ballot so prepared as *to enable the voter to know whom or what he is voting for." Foley v. Donovan,* 274 Minn. 501, 504, 144 N.W.2d 600, 603 (1966) (emphasis added) (referring to Minn.Stat. § 203.30 (1966)). We further explained: "Our election laws are bottomed on the theory that no candidate for an office ought to be given an unfair advantage over another and *the people ought to be permitted to know whom and what they are voting for." Id.* at 503, 144 N.W.2d at 603 (emphasis added). In *Dougherty v. Holm,* we emphasized that the purpose of allowing additional information on the ballot about the occupation and residence of similarly named candidates was to serve the voters' need to identify the candidates. 232 Minn. 68, 70, 44 N.W.2d 83, 84 (1950). We stated: "It seems clear that the legislative purpose in permitting candidates to identify themselves where two or more having the same surname appear on the ballot is *to prevent confusion in the minds of voters and to*

*enable them to cast their ballots for the candidates of their choice." Id.* at 70, 44 N.W.2d at 84 (emphasis added). Addressing the candidate's desire to add a reference on the ballot to his former occupation, the court explained further: *"We are not concerned with the individual candidate.* We are concerned with *what the voters are entitled to know* about the occupations of the various candidates if such candidates come within the terms of the statute...." *Id.* at 72, 44 N.W.2d at 85 (emphasis added). And, as discussed above, in *Clifford* we acknowledged Attorney General Opinions advising that a nickname by which the candidate was commonly or generally known could be used on the ballot. 357 N.W.2d at 100. We pointed out that the Attorney General Opinions allowed the use of nicknames "for the purpose of identifying the candidate to voters."[7] *Id.*

The evidence before us makes it abundantly clear that Severson does not need the alternate name on the ballot to allow voters to identify him. As explained above, until now Severson has consistently and prevalently presented a public persona as Dan or Daniel Severson. Even those who know him as "Doc" acknowledge that they also know his name is Dan. The fact that Severson has run successfully for the Legislature four times without any apparent use of the alternate name "Doc" is itself persuasive evidence that adding "Doc" to the ballot is not necessary to enable voters to identify him.

### III.

Petitioner Weiler also contends that use of "Doc" on the ballot would violate Minn.

Stat. § 204B.35, subd. 2, by giving Severson an advantage over his opponents. Section 204B.35, subdivision 2, provides in relevant part: "The name of a candidate shall not appear on a ballot in any way that gives the candidate an advantage over an opponent, including words descriptive of the candidate's occupation, qualifications, principles, or opinions, except as otherwise provided by law." Because we conclude Severson's use of "Doc" is not allowed under section 204B.06, subdivision 1, we need not address the section 204B.35 issue.

Petition granted.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this matter.

---

7. This purpose of providing the voter with information with which to identify the candidate was consistently articulated in the Attorney General Opinions. *See, e.g.,* Op. Att'y Gen. No. 28b–2 (May 22, 1934) (stating "it seems that [the candidate] is simply adopting a combination of his real name and the 'nickname' by which he is most commonly known, *for the purpose of enabling the voters to identify him"* (emphasis added)); Op. Att'y Gen. No. 28–b–2, at 1–2 (May 12, 1941) ("[A] candidate may adopt a combination of his real name and a nickname or the name by which he is most commonly known *for the purpose of enabling voters to identify him."* (emphasis added)).