Daniel J. MOULTON, Petitioner,

v.

Steve SIMON, in his official capacity as Secretary of the State of Minnesota, and Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, Respondents.

No. A16–0925.

Supreme Court of Minnesota.

Aug. 17, 2016.

Daniel J. Moulton, Rochester, MN, pro se.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint Paul, MN, for respondents.

Brett A. Corson, Fillmore County Attorney, Melissa W. Hammell, Assistant Fillmore County Attorney, Preston, MN, for the Fillmore County Auditor.

## OPINION

PER CURIAM.

Daniel J. Moulton filed a petition pursuant to Minn. Stat. § 204B.44 (2014), requesting an order requiring respondents Secretary of State Steve Simon and Attorney General Lori Swanson to include Moulton's name on the 2016 primary election ballot as a candidate for Third Judicial District Seat 16, which is located in Houston County. Moulton contends the respondents erred in allowing a county auditor to strike his name from the 2016 primary election ballot despite his timely filing of an affidavit of candidacy that included proof that he is licensed to practice law in Minnesota, *see* Minn.Stat. § 204B.06, subd. 8 (2014). Because we agreed that Moulton complied with the statutory requirements for filing as a candidate for judicial office, we filed an order on June 14, 2016 that granted the petition and noted that this opinion would follow.

The facts are largely undisputed. Moulton's petition concerns the 2016 election for a judicial seat in Houston County. A candidate for election to a judicial office must file an affidavit of candidacy that, among other things, states that the candidate is an "eligible voter" who "will have maintained residence in the district from which the candidate seeks election." Minn.Stat. § 204B.06, subd. 1 (2014). In addition, a candidate for judicial office must "submit with the affidavit of candidacy proof that the candidate is licensed to practice law in" Minnesota, which "means providing a copy of a current attorney license." *Id.*, subd. 8.[1]

---

1. The requirement to provide a "copy of a current attorney license" was added to sec- tion 204B.06, subdivision 8, by the 2008 Leg-

On May 19, 2016, Moulton filed an affidavit of candidacy for Third Judicial District Seat 16 with the Fillmore County Auditor.[2] With his affidavit of candidacy, Moulton submitted the required filing fee, listed his Minnesota attorney license number, and presented his Minnesota driver's license and the attorney license card issued to him by the Lawyer Registration Office. *See* Rule 3(A), Rules of the Supreme Court on Lawyer Registration (requiring the office to issue to a lawyer who demonstrates compliance with the requirements to practice law a "license" that shows "the license status of the lawyer"). Later that same day, after noticing that Moulton had requested on his affidavit that his personal residence address remain private, the Fillmore County Auditor contacted Moulton and asked him to return to the Auditor's office to prepare a new affidavit that did not include his personal address. *See* Minn.Stat. § 204B.06, subd. 1b(c) (2014) ("If the candidate requests that the candidate's address of residence be classified as private data, the candidate must list [that information] on a separate form to be attached to the affidavit."). Moulton returned to the Auditor's office that same day and, when executing the revised affidavit of candidacy, he again presented his Minnesota attorney license card. Respondents and the Fillmore County Auditor do not dispute that when submitting his affidavit of candidacy on May 19, 2016, Moulton presented his attorney license card twice to personnel in the Auditor's office.

The 2016 election-filing period closed on May 31, 2016. On June 2, 2016, after noticing that a copy of Moulton's attorney license was not attached to his affidavit of candidacy, the Fillmore County Auditor contacted Moulton and asked him to provide a copy of his license. Moulton returned to the Auditor's office that same day, explained that he had presented his attorney license card on May 19, and allowed the Auditor's office to make a copy of the license card.

The Fillmore County Auditor notified the Secretary of State, on June 2, 2016, that she had rejected Moulton's affidavit of candidacy. The Fillmore County Auditor decided Moulton had failed to comply with the requirements of Minn.Stat. § 204B.06, subd. 8, because he did not provide a copy of his attorney license during the filing period. The Auditor explained the decision to Moulton as follows:

[A]t this time your name will not ... be on the election ballot as a candidate for Judge in the Third District Court 16. Your affidavit of candidacy did not have attached to it a copy of your current attorney license and a copy of your current attorney license was not provided within the filing period.... The Fillmore County Attorney's Office, the Secretary of State's Office, and the Attorney General's Office have been consulted in making this determination.

The Secretary of State notified election officials in the Third Judicial District that Fillmore County had rejected a judicial candidate for Seat 16. As a result, the

islature. Act of Apr. 25, 2008, ch. 244, art. 2, § 16, 2008 Minn. Laws 631, 647.

**2.** Moulton filed his affidavit of candidacy with the Fillmore County Auditor, his county of residence. *See* Minn. Stat. § 204B.09, subd. 1(d) (2014) ("Affidavits and petitions for state offices must be filed with the secretary of state or with the county auditor of the county

in which the candidate resides."). Both Fillmore County and Houston County are in the Third Judicial District, and no one contends that Moulton does not reside in the Third Judicial District. *See* Minn. Const. art. VI, § 4 ("Each judge of the district court in any district shall be a resident of that district at the time of his selection....").

Secretary explained, Moulton would not be included on the certification of candidates for the state primary election, and Seat 16 would not be included on the primary ballot. *See* Minn.Stat. § 204D.07, subd. 3 (2014) ("If not more than twice the number of individuals to be elected to a nonpartisan office file for the nomination, their names and the name of the office shall be omitted from the . . . primary ballot. . . .").

On June 8, 2016, Moulton filed a petition under Minn.Stat. § 204B.44, asking us to direct the Secretary of State to include his name on the primary election ballot for Third Judicial District Seat 16. We ordered Moulton to serve his petition and our scheduling order on the other candidates for the Houston County judicial seat and on the Houston and Fillmore County Auditors. The Secretary of State and the Attorney General, in a joint response, request dismissal from this proceeding, arguing that they are not proper parties to the proceeding because the Fillmore County Auditor, not their offices, decided to reject Moulton's affidavit of candidacy. The Secretary of State and the Attorney General also contend that the affidavit of candidacy form made available by the Secretary of State's office, which directs the filer to "attach[ ]" a copy of an attorney license, "correctly reflects the legal requirement" of the statute. The Fillmore County Auditor contends Moulton failed to comply with the statute because he did not provide a copy of his attorney license until June 2, 2016, after the filing period had closed.

## I.

The first issue we address is the motion by the Secretary of State and the Attorney General for dismissal. In naming Secretary Simon as a respondent, Moulton alleged that the Secretary of State is "the chief elections official in Minnesota," responsible for "administering Minnesota's election laws" and overseeing the "prepa-ration of election ballots." With respect to Attorney General Swanson, Moulton alleged that she is the chief legal officer for the State and in that capacity, approves "the actions of the Secretary of State." The Secretary of State and the Attorney General argue that they are improperly named because they did not reject Moulton's affidavit of candidacy or remove Moulton's name from the primary ballot in the Third Judicial District. They therefore ask to be dismissed from this proceeding.

Minnesota Statutes § 204B.44 allows a person to seek correction of any error or omission committed by a "county auditor, canvassing board . . ., the secretary of state, or any other individual charged with any duty concerning an election." Minn. Stat. § 204B.44(d). The petition must "describe the error, omission, or wrongful act," and be served "on the officer, board or individual charged with the error, omission, or wrongful act." *Id.* The proceeding authorized by section 204B.44 thus allows potential candidates to seek relief from the errors and omissions "of those enumerated persons charged with properly completing the procedural and mechanical duties attendant to the election process." *Schroeder v. Johnson,* 311 Minn. 144, 145, 252 N.W.2d 851, 852 (1976).

■ The Secretary of State, it is true, did not reject Moulton's affidavit of candidacy and does not place the candidates on the primary ballot for the Third Judicial District seat at issue. Nevertheless, the Secretary of State is the chief election official for the State, *Clark v. Pawlenty,* 755 N.W.2d 293, 299 (Minn.2008), and in that role administers election procedures, issues rules and instructions regarding election laws, and adopts rules for the format and preparation of the primary election ballot. *See, e.g.,* Minn.Stat.

§§ 204B.27, subd. 2 (2014); 204D.08, subd. 1 (2014). We have held that the Secretary of State is properly named as a respondent to a petition filed pursuant to Minn.Stat. § 204B.44, even when the Secretary takes no direct action regarding a particular candidate on the ballot, based on the Secretary of State's statutory election-related duties. *See Martin v. Dicklich*, 823 N.W.2d 336, 339–40 (Minn.2012) (denying the Secretary of State's motion to be dismissed as a respondent based on the Secretary's "interests in ballot preparation and election administration" that are implicated by a petition requesting relief concerning a particular ballot).

In addition, we do not agree that the Secretary of State had no relevant role in the events that led to Moulton's petition. The Secretary of State prepared the 2016 Guide for Candidates, which directed candidates for judicial office to "submit a copy of a current Minnesota law license." The Secretary also made available a form affidavit of candidacy that directed candidates for judicial office to "attach[ ]" a copy of their attorney license. The Fillmore County Auditor consulted with the Secretary of State, among others, in deciding to reject Moulton's affidavit of candidacy because a copy of his attorney license was not attached to the affidavit. *Martin*, 823 N.W.2d at 340 ("[I]t is logical to assume that county election officials who are required to prepare ballots subject to the Secretary's rules would turn to the Secretary of State for guidance...."). The Secretary of State notified election officials in the Third Judicial District that Seat 16 would not be included on the primary ballot. In light of these facts, we conclude that Secretary Simon is properly named as a respondent in this proceeding.

■ We do not reach the same conclusion regarding the Attorney General. The petition identifies no role the Attorney General played in the events surrounding Moulton's candidacy for Seat 16, nor does it identify any "duty" she holds concerning this election. *See* Minn.Stat. § 204B.44(d) (permitting a petition to be filed that challenges "any wrongful act, omission, or error" by "any ... individual charged with any duty concerning an election"). Further, there is no allegation that the Attorney General can implement the relief that Moulton requested in his petition. *See Clark*, 755 N.W.2d at 299 (noting that the Governor is not responsible for ballot preparation and therefore cannot implement the relief requested). Finally, we do not agree with Moulton's argument that the Attorney General's statutory obligation to appear as the State's legal representative, *see* Minn.Stat. § 8.01 (2014), confers *on her* an election-related duty over the Secretary of State, who is a separate constitutional officer. *See Carlson v. Ritchie*, 830 N.W.2d 887, 894 (Minn.2013) (recognizing that the remedy provided by section 204B.44 to address "directly related election procedures" does not encompass official duties that are only tangentially related to an election); *see also* Minn. Const. art. V, § 1 (identifying the separate officers of the executive branch). We therefore dismiss Attorney General Swanson from this proceeding.

## II.

■ Next, we consider whether Moulton complied with the statutory requirements for a candidate for judicial office when he presented his attorney license card to personnel in the Fillmore County Auditor's Office with his affidavit of candidacy. If he did so, then the Fillmore County Auditor erred when she rejected Moulton's affidavit of candidacy. Moulton bears the burden of demonstrating that election officials erred by striking his affidavit of can-

didacy. *See Weiler v. Ritchie,* 788 N.W.2d 879, 882 (Minn.2010).

■■■ Statutory interpretation is a question of law that we review de novo. *Reiter v. Kiffmeyer,* 721 N.W.2d 908, 910 (Minn.2006). The object of statutory interpretation is to "ascertain and effectuate the intent of the legislature." *State v. Gaiovnik,* 794 N.W.2d 643, 647 (Minn. 2011). We begin with the language of the statute, which we construe according to its plain and ordinary meaning. *Weiler,* 788 N.W.2d at 884. If a statute is not ambiguous, we apply its plain meaning and engage in no further construction. *Reiter,* 721 N.W.2d at 910.

A candidate for state judicial office must "*submit* with the affidavit of candidacy proof that the candidate is licensed to practice law" in Minnesota, which means "*providing a copy* of a current attorney license." Minn.Stat. § 204B.06, subd. 8 (emphasis added). The Fillmore County Auditor identified two reasons for her decision to reject Moulton's affidavit of candidacy: he "did not have attached to it a copy of [his] current attorney license" and "a copy of [his] current attorney license was not provided within the filing period." We consider each reason separately.

■■ The first reason for rejecting Moulton's affidavit is plainly inconsistent with the statutory language. The word "attached" does not appear in subdivision 8 of section 204B.06. Further, the plain meaning of the word used in the statute, "providing," has a broader scope than the word "attached." *Compare Oxford Dictionary*

of English 1430 (3d ed. 2010) ("provide: make available for use"), *and Webster's Third New International Dictionary* 1827 (2002) ("provide: ... 2b: to supply for use"), *with Oxford Dictionary of English, supra,* at 101 ("attach: add or fasten (a related document) to another"). Although attaching a copy of a required item to an affidavit of candidacy may fulfill the statutory requirement to "provid[e]" the item, supplying, without attaching, a copy of the item also satisfies the plain language of the statute. Minn.Stat. § 204B.06, subd. 8. We also note that the Legislature used "attached" in the same statute to describe documents that *must be* included with a candidate's affidavit. *See* Minn.Stat. § 204B.06, subd. 1b(c) (stating that a candidate must list an "address of residence on a separate form *to be attached* to the affidavit" (emphasis added)). When the Legislature makes a deliberate choice to use the word "attached" with respect to some documents and "provid[ed]" with respect to others, we will not assume the two words have the same meaning. *In re Stadsvold,* 754 N.W.2d 323, 328–29 (Minn. 2008) (stating that "distinctions in language in the same context are presumed to be intentional"). Thus, the Fillmore County Auditor erred in rejecting Moulton's affidavit of candidacy on the ground that he did not attach a copy of his current attorney license to the affidavit.[3]

■■ Second, the Fillmore County Auditor rejected Moulton's affidavit of candidacy because "a copy of [his] current attorney license was not provided within the filing period." In contrast to the first

---

3. The form affidavit of candidacy made available by the Secretary of State directs candidates to affirm that they are "licensed to practice law," provide an attorney license number, and "*attach* []" a "copy of [the] license" to the affidavit. (Emphasis added.) In his response to Moulton's petition, the Secretary of State argued that the "affidavit form

correctly reflects the legal requirement." We disagree. If the statute does not require a candidate to "attach" the proof of license to practice to the affidavit, then the Secretary's form misstates the law because "[t]he Secretary of State's office has no authority to change state law." *Paquin v. Mack,* 788 N.W.2d 899, 906 (Minn.2010).

reason the Auditor offered for rejecting the affidavit, the plain language of Minn. Stat. § 204B.06 requires a candidate for judicial office to "provid[e] a copy of a current attorney license." As noted above, the plain and ordinary meaning of the verb "provide" is to make available for use. *See Oxford Dictionary of English* 1430 (3d ed.2010) ("provide: to make available for use"); *Webster's Third New International Dictionary* 1827 (2002) ("provide: ... 2b: to supply for use"). There appears to be no dispute that Moulton "provided" his attorney license card to personnel in the Fillmore County Auditor's office when he filed his affidavit of candidacy on May 19, 2016. Moulton's petition alleges that he "presented" and "submitted" his attorney license card to the Auditor's office, and the Auditor agrees that Moulton "showed" his attorney license card on May 19. Any of these actions made Moulton's license card "available for use," and he therefore "provid[ed]" the license card as the statute requires. Minn.Stat. § 204B.06, subd. 8.

The remaining question is whether the card Moulton provided is "a copy of [his] current attorney license." Minn.Stat. § 204B.06, subd. 8. The Fillmore County Auditor argues that Moulton provided "his original law license," not "a copy" of that license. Thus, to state it more specifically, the question is whether the attorney license card that Moulton presented to the Auditor's office on May 19 is Moulton's original license to practice law or a copy of his license to practice law. *See* Minn.Stat. § 204B.06, subd. 8 (requiring the candidate to submit "proof" that the candidate "is licensed to practice law" by "providing a copy of a current attorney license"). We

conclude that the attorney license card is a copy of Moulton's license to practice law.[4]

We establish the qualifications for admission to the practice of law in Minnesota, Minn.Stat. § 481.01 (2014), and once admitted, the rules that govern the conduct of lawyers in the practice of law. Minn.Stat. § 480.05 (2014). For those lawyers who demonstrate they have met these standards and rules, we confer the privilege, or license, to practice law. *See In re Smith,* 220 Minn. 197, 199, 19 N.W.2d 324, 325 (1945) (stating that "[t]he right to practice law is a matter of license" rather than an "absolute right" and "is in the nature of a franchise, to ... which one is admitted only upon proof of fitness and qualification"); *In re Petition for Integration of the Bar of Minn.,* 216 Minn. 195, 200, 12 N.W.2d 515, 518 (1943) ("The practice of law ... is a privilege conferred on the individual by the [supreme] court to further the administration of justice."). Without the privilege to practice law conferred by this court, a person that protects, defends, or enforces the legal rights of another engages in the unauthorized practice of law. *See In re Grigsby,* 815 N.W.2d 836, 842 (Minn.2012) (stating that "an unlicensed person" engages in the "unauthorized practice of law" by acting in a representative capacity); *License, Black's Law Dictionary* (10th ed. 2014) ("A privilege granted by a state or city upon the payment of a fee, the recipient of the privilege then being authorized to do some act ... that would otherwise be impermissible.").

The State Board of Law Examiners recommends to the court the "admission and

---

4. Even if the Fillmore County Auditor is correct, and the license Moulton presented on May 19 is his original attorney license, the Auditor does not explain why presentation of the license itself, rather than a copy, would be a basis to reject an affidavit of candidacy.

*See, e.g., Sardeson v. Menage,* 41 Minn. 314, 316, 43 N.W. 66, 66 (1889) (noting that "production of the original records," rather than certified copies, was sufficient for purposes of redemption).

licensure of applicants to practice law in Minnesota." Rule 3(B)(7), Rules for Admission to the Bar. Thereafter, on an annual basis, a Minnesota lawyer who reports compliance with court rules and pays a registration fee receives from the Lawyer Registration Office a "license in such form as may be provided by this court, showing the license status of the lawyer." Rule 3(A), Rules of the Supreme Court on Lawyer Registration. A lawyer's license status can be "active," meaning "in good standing and ... authorized to practice law"; "inactive," meaning "in good standing but ... not authorized to practice law"; or "non-compliant," meaning "not in good standing and ... not authorized to practice law." Rule 1(A)-(B), (F), Rules of the Supreme Court on Lawyer Registration.

The card issued by the Lawyer Registration Office is not the attorney's "original" license to practice law. Minnesota attorneys are licensed to practice law by our court, not by the Lawyer Registration Office. Further, the license card that attorneys receive on an annual basis simply confirms the attorney's authorized or unauthorized status based on compliance (or lack thereof) with the rules that we establish.[5] The license card is, in other words, "a copy of a current attorney license" because it reproduces in tangible form the intangible privilege we initially conferred and annually renew. *See, e.g., Copy, Black's Law Dictionary* (10th ed. 2014)

("An imitation or reproduction of an original.").[6]

Based on this analysis, we conclude that Moulton complied with the requirement to "submit" proof that he is licensed to practice law by "providing a copy of [his] current attorney license." Minn.Stat. § 204B.06, subd. 8. Moulton presented evidence in his petition that he provided a copy of his current attorney license to the Fillmore County Auditor's office, twice, on May 19. And, as shown in Moulton's exhibit, the attorney license card he presented to the Auditor's office listed his license type as "authorized" to practice law. Moulton therefore complied with the requirement in Minn.Stat. § 204B.06, subd. 8, to "submit with the affidavit of candidacy proof that [he] is licensed to practice law" in Minnesota, and the Fillmore County Auditor erred when she rejected his timely affidavit of candidacy. Because he filed a timely affidavit of candidacy with proof that he is licensed to practice law in Minnesota, we hold that Daniel J. Moulton must be included as a candidate for Third Judicial District Seat 16 on the primary election ballot.

Petition granted.

**5.** Pursuant to our rules, failure to comply with the requirements for active-license status "automatically suspend[s]" the lawyer's license to practice law in Minnesota. Rule 2(H), Rules of the Supreme Court on Lawyer Registration.

**6.** The Lawyer Registration Office was established, in part, because the court had "no current list of those who are authorized to practice law" in Minnesota. *Rules Regarding Registration of Attorneys*, 260 Minn. vii (Oct. 5, 1961). In order to have "on file annually a

current list of all those authorized to practice law," we promulgated a rule that required "the clerk of the supreme court" to deliver a certificate to an attorney admitted to practice law, and each year thereafter upon payment of the registration fee, the clerk sent to attorneys "a suitable sticker or certificate showing the current good standing of such attorney." *Id.* at viii. The current license card is simply a more practical form of the past sticker or certificate practice.