STATE of Minnesota, Respondent,

v.

Christopher George GAIOVNIK,
a/k/a Christopher George
Gaiounik, Appellant.

No. A09–190.

Supreme Court of Minnesota.

March 9, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and John Choi, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Roy Spurbeck, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

GILDEA, Chief Justice.

The question presented in this case is whether the district court violated Minn. Stat. § 611A.04, subd. 1(a) (2010), when it ordered appellant Christopher Gaiovnik (Gaiovnik) to pay restitution to a victim when the victim did not request restitution. Because we conclude that the district court's authority to order restitution is not limited to those situations where a victim submits a request for restitution, we affirm.

On December 10, 2007, Gaiovnik and his accomplice, Christopher Landvik, robbed two employees of Hollister, a clothing store located in the Rosedale Mall. The robbery occurred in the mall parking ramp as two employees were on their way to the bank to deposit the store's cash receipts.

Shortly after the robbery, the employees returned to the Hollister store inside the mall. Their manager called 911 and police subsequently arrested Gaiovnik. The State charged Gaiovnik with simple robbery in violation of Minn.Stat. § 609.24 (2010), theft in violation of Minn.Stat. § 609.52, subds. 2(1) and 3(2) (2010), and aiding and abetting both crimes in violation of Minn.Stat. § 609.05, subd. 1 (2010).

The evidence at trial established that the amount stolen from Hollister during the robbery was at least $19,200. One employee testified that she told police that the amount stolen was "19,200.00." The jury also heard the tape of the 911 call, in which this employee told the 911 operator that the stolen purse contained two cash bags containing $7,821 and $11,400, respectively. Finally, the second employee testified that on the day of the robbery, the stolen purse contained over $19,000 but less than $20,000. Gaiovnik did not dispute the amount stolen at trial, and he does not dispute on appeal that the amount stolen was at least $19,200.

The jury found Gaiovnik guilty of both simple robbery and theft. The district court convicted him of simple robbery and imposed sentence. During the sentencing hearing the parties and the court discussed restitution. Gaiovnik's counsel argued that the district court could not impose restitution because there was no restitution request from a victim. The presentence investigation report notes that Hollister and the two employees received victims' rights letters and information regarding restitution. But the record does not contain a restitution request from either Hollister or the individual victims.[1]

In response to Gaiovnik's argument, the court asked the State whether it was able to recover the money. The State responded that it never recovered the stolen money. The court then asked the State, "Do you have a specific amount that you could remind me of that was taken." The State responded that "[j]ust over $19,000" was stolen. The court stated, "Because if I remember correctly the allegation was that Mr. Gaiovnik took a trip to Vegas right after the robbery. Isn't that right?" The State answered affirmatively. The court then asked Gaiovnik and his counsel if they had anything else to say, and they responded that they did not have anything else to add.

The district court subsequently sentenced Gaiovnik to 48 months imprisonment and imposed a $300 fine. The court also ordered Gaiovnik to pay to Hollister

---

1. The presentence investigation report also reflects that Gaiovnik had $160,000 in cash and $15,000 in credit card debt, and that he was about to lose his home in foreclosure because he was behind on his mortgage payments.

the difference between $19,200 and any money paid by Gaiovnik's accomplice.

Gaiovnik appealed and argued that the evidence was not sufficient to sustain his conviction, he was prejudiced by evidentiary rulings, and the district court erred in awarding restitution. The court of appeals affirmed in an unpublished opinion. *State v. Gaiovnik*, No. A09–190, 2010 WL 1439156, at *9 (Minn.App. Apr. 13, 2010). With respect to restitution, the court held that Gaiovnik waived his right to challenge the restitution award because Gaiovnik did not challenge the restitution award within 30 days of sentencing, as required by Minn.Stat. § 611A.045, subd. 3(b) (2010). *Gaiovnik*, 2010 WL 1439156, at *8–9. The court of appeals did not address Gaiovnik's argument that the district court lacked authority to order restitution in the absence of a victim's request. *Id.* We granted Gaiovnik's petition for review on the restitution question.

■ Gaiovnik argues that the district court lacked authority to order him to pay restitution to Hollister because Hollister did not submit a request for restitution. Specifically, he argues that restitution can be awarded under Minn.Stat. § 611A.04 (2010) and Minn.Stat. § 611A.045 only when a victim submits a request for restitution. The State contends that the court had the authority under Minn.Stat. § 609.10 (2010) to order restitution even in the absence of a victim's request. We review questions of statutory interpretation de novo. *Roby v. State*, 787 N.W.2d 186, 190 (Minn.2010).

## I.

Before turning to the statutory interpretation question that the parties raise, we must first examine the court of appeals' holding that Gaiovnik waived the right to challenge the restitution award. As noted above, the court of appeals did not reach the legal question Gaiovnik raises regarding the district court's authority to award restitution because the court of appeals held that Minn.Stat. § 611A.045 barred him from challenging restitution on appeal. *Gaiovnik*, 2010 WL 1439156, at *8–9.

The court of appeals grounded its holding that Gaiovnik waived his right to challenge the restitution award on appeal in Minn.Stat. § 611A.045, subd. 3(b). *Gaiovnik*, 2010 WL 1439156, at *9. This provision sets out procedures the offender must follow to contest restitution. *See* Minn. Stat. § 611A.045, subd. 3(b). The offender may challenge a restitution award, but under subdivision 3(b), he "must do so by requesting a hearing [in writing and] within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later." Minn.Stat. § 611A.045, subd. 3(b). Once "the 30–day time period has passed," the statute does not permit the offender to challenge a restitution award. *Id.*

Gaiovnik did not submit a written request for a hearing on the restitution issue. Rather, his counsel orally challenged the district court's authority to order restitution during the sentencing hearing. The court rejected this challenge and awarded restitution to Hollister. Because Gaiovnik did not "challenge[ ] the restitution award in the district court after the award was made," the court of appeals concluded that section 611A.045, subdivision 3(b), foreclosed Gaiovnik from pursuing the restitution award on appeal. *Gaiovnik*, 2010 WL 1439156, at *9.

Gaiovnik does not argue that he complied with the statute. He contends that he did not need to follow the requirements of section 611A.045, subdivision 3(b), because he was challenging the legal authority of the district court to award restitution, not the amount of restitution. He argues

that section 611A.045, subdivision 3(b), requires an offender to object to the victim's request but not to the court's order of restitution. Gaiovnik concludes that because no victim made a request for restitution, he did not waive the right to appeal the issue of the district court's legal authority to award restitution in the absence of a request. The State disagrees and contends that Gaiovnik was obligated to follow the procedures in section 611A.045, subdivision 3(b), regardless of whether a victim made a request for restitution. Because Gaiovnik did not submit a hearing request within 30 days after the restitution award was made, the State argues that Gaiovnik has waived the right to contest the restitution award on appeal.

We conclude that the procedures set forth in section 611A.045, subdivision 3(b), do not apply when, as in this case, an offender challenges the district court's legal authority to award restitution. The object of statutory construction is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2010); *see also Weiler v. Ritchie,* 788 N.W.2d 879, 884 (Minn.2010). When interpreting statutes, we do not examine different provisions in isolation. Instead, we construe a statute "as a whole," and "[w]ords and sentences are understood ... in the light of their context." *Christensen v. Hennepin Transp. Co., Inc.,* 215 Minn. 394, 409, 10 N.W.2d 406, 415 (1943). In reviewing whether subdivision 3(b) of the statute applies, therefore, we do not look at this provision in isolation. Rather, we look at the provision in context.

Paragraph (a) of subdivision 3 provides this context. Subdivision 3(a) establishes procedures that apply when an "offender intends to challenge the amount of restitution or specific items of restitution or their dollar amounts." Minn.Stat. § 611A.045, subd. 3(a). In that instance, the offender

has the burden to produce evidence, which "must include a detailed sworn affidavit of the offender ... justifying dollar amounts of restitution which differ from the amounts requested by the victim." *Id.* When there is a dispute as to the "proper amount or type of restitution," that dispute "must be resolved by the court by the preponderance of the evidence." *Id.* And, finally under this paragraph, the State has "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense and the appropriateness of a particular type of restitution." *Id.*

The requirements of subdivision 3(a) govern when the offender disputes the amount or type of restitution. They do not, by their terms, apply when the dispute is over the court's legal authority to order restitution. When subdivision 3(b) is read in this context, it should likewise be construed to apply only to disputes as to the amount or type of restitution.

The language of paragraph (b) supports this interpretation insofar as the paragraph provides that an offender challenging a restitution award "must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested." Minn. Stat. § 611A.045, subd. 3(b). By tying the deadline to the offender's receipt of notice as to the amount of the restitution request, the paragraph describes challenges to the amount of restitution, but not challenges to the district court's legal authority. But the rest of paragraph (b) is not so limited because it simply requires a challenge to restitution to be made "within 30 days of sentencing." *Id.* Construing paragraph (b) broadly enough to cover all challenges to restitution, however, is inconsistent with the statutory context discussed above, which is limited to disputes over the amount or type of restitution.

■ A narrow reading of subdivision 3(b) also avoids a potential separation of powers concern. The district court imposed the restitution award as part of Gaiovnik's sentence. *See* Minn.Stat. § 609.10, subd. 1(a)(5) ("Upon conviction of a felony and compliance with the other provisions of this chapter the court, if it imposes sentence, may sentence the defendant to the extent authorized by law ... to payment of court-ordered restitution in addition to either imprisonment or payment of a fine, or both."). Under Minn. R.Crim. P. 27.03, subd. 1(B)(7)(b), a defendant may raise "other sentencing issues" at the sentencing hearing. The Rules of Criminal Procedure further provide that when a defendant challenges his or her sentence in a direct appeal, the court of appeals "may review the sentence." Minn. R.Crim. P. 28.05, subd. 2; *see also* Minn. R.Crim. P. 28.02, subd. 11 (stating that the court of appeals "may review any order or ruling of the district court" when the defendant appeals from a judgment of conviction). As a result, the typical procedure that a defendant must follow in order to preserve a sentencing issue for appeal is to raise the issue with the district court at the sentencing hearing. *See State v. Henderson,* 706 N.W.2d 758, 759 (Minn.2005) (discussing how a defendant's failure to raise an issue at the time sentence is imposed can constitute a waiver of the defendant's ability to raise the issue for later review).

The statute, as the court of appeals applied it, is arguably inconsistent with our court rules because under the court of appeals' reading, the statute purports to limit a defendant's ability to raise an issue on appeal by limiting the manner and time period in which the defendant can challenge a restitution award. Specifically, if a defendant does not challenge the district court's award of restitution in writing within 30 days of the sentencing hearing, the defendant cannot thereafter seek review of that part of his sentence in a timely direct appeal even if the defendant challenged the district court's legal authority to award restitution at the sentencing hearing. The statute potentially conflicts with our court rule to the extent it requires the defendant to take additional action in the district court in order to preserve a sentencing issue for appeal. In this way, the statute could be read as conflicting with our court rules that permit a defendant to raise other sentencing issues at the sentencing hearing and then allow the court of appeals to review the sentence when a defendant challenges his or her sentence in a direct appeal. *Cf. State v. Losh,* 721 N.W.2d 886, 891–92 (Minn.2006) (noting that "statutes that set time limits for an appeal" are procedural and holding that the statute at issue in that case, which provided that a defendant had to appeal her sentence within 90 days, was unconstitutional because it "encroaches on a judicial function in violation of the separation of powers under the Minnesota Constitution").

■ We have recognized that we are to construe statutes to avoid a constitutional confrontation if it is possible to do so. *In re Civil Commitment of Giem,* 742 N.W.2d 422, 429 (Minn.2007). We are to do so even if the construction that avoids a constitutional confrontation is the "less natural" construction. *State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 363 (Minn. 1980). Adhering to that principle in this case leads to a construction that the procedures in section 611A.045, subdivision 3(b), do not apply in the narrow circumstances presented here—where the only challenge is to the legal authority of the court to order restitution and that challenge was raised in the district court.

In sum, reading subdivision 3(b) within the context of subdivision 3 as a whole and

in order to avoid a constitutional question, we conclude that the requirements of subdivision 3(b) do not apply to a challenge to the district court's legal authority to award restitution. Because the time deadline in subdivision 3(b) does not govern Gaiovnik's challenge, we hold that his failure to submit a written challenge within 30 days after the sentencing hearing does not preclude Gaiovnik from challenging in a direct appeal the district court's legal authority to award restitution when he raised this legal issue with the district court at the sentencing hearing.

## II.

We turn next to the statutory interpretation question the parties raise and consider whether the district court has the statutory authority to order a defendant to pay restitution absent a victim's request. Gaiovnik contends that the plain language of section 611A.04 requires a victim to request restitution before a district court can award restitution. He further argues that the plain language of sections 611A.04 and 611A.045 requires a request for restitution from a victim to "trigger" the procedural requirements contained in the statute. Gaiovnik notes that section 611A.04 refers to a "request" for restitution five times and section 611A.045 refers to a "request" three times, and he argues that the repeated use of the word "request" in the statute supports his position that the district court had no authority to order restitution in the absence of a victim's request. Finally, Gaiovnik contends that even though section 609.10 provides "a court with the sentencing authority to order restitution," that authority is subject to the requirements of sections 611A.04 and 611A.045.

For its part, the State contends that we must consider sections 609.10 and 611A.04 together. The State argues that neither the restitution statute in the criminal code, section 609.10, nor the victims' rights statute, section 611A.04, "restrict a district court's authority to order restitution in the absence of a restitution request." Finally, the State argues that when read together, section 609.10 and section 611A.04 do not conflict because "[t]he former permits a restitution order whether or not a victim is involved [and t]he latter govern[s] when a victim seeks restitution."

■ The State correctly relies on section 609.10 in arguing that the district court has the authority to award restitution as part of the sentence even without a request from the victim. The statute provides that upon conviction of a felony, the court "may sentence the defendant ... to payment of court-ordered restitution in addition to either imprisonment or payment of a fine, or both." Minn.Stat. § 609.10, subd. 1(a)(5). As the State notes, the plain language of section 609.10 does not condition the awarding of restitution on a victim's request for restitution.

Subdivision 2 of section 609.10 reinforces the State's contention that the district court's authority to award restitution is not limited to the circumstances where the victim requests restitution. The Legislature defined "restitution" in subdivision 2 and noted that restitution includes "payment of money to a victim assistance program or other program directed by the court" when "the victim is deceased or already has been fully compensated." Minn.Stat. § 609.10, subd. 2(a)(2). This definition of restitution plainly contemplates an award of restitution when the victim has not requested restitution, either because the victim is dead or has otherwise been fully compensated.[2]

2. During oral argument, the suggestion was made that the phrase "to the extent author-

With respect to sections 611A.04 and 611A.045, it is true, as Gaiovnik contends, that these sections refer to a "restitution request" several times. But neither provision explicitly states that a district court cannot award restitution to a victim when the victim does not request restitution. Section 611A.04 simply states that crime victims have a right to restitution, it indicates what can be included in a restitution request, and it sets out the procedural requirements victims, prosecutors, and the court must follow when the victim submits a request for restitution. Minn.Stat. § 611A.04, subd. 1.[3]

Rather than conditioning a restitution order on the receipt of a victim's request, section 611A.04 places a duty on the district court to request information from the victim in order to determine the amount of restitution owed. *See* Minn.Stat. § 611A.04, subd. 1(a) (requiring courts to "request information from the victim *to determine the amount of restitution owed* "* (emphasis added)). The statute does not require that the court solicit this information to determine whether the court should order restitution. This information is purely to determine how much restitution the court should award based on losses brought to the court's attention by the victim. *See id.*

Further, the statute states that *"[i]n order to be considered at the sentencing or dispositional hearing,* all information regarding restitution must be received by the court administrator of the appropriate court at least three business days before the sentencing or dispositional hearing." *Id.* (emphasis added). This language states that the district court cannot consider the victim's request for restitution without the proper information because this information provides a factual basis for the award. But the language in this provision

ized by law" in section 609.10, subdivision 1, requires that each part of the sentence identified in section 609.10 have substantive authorization found elsewhere in the criminal code. Even if we were to construe this phrase as requiring additional authorization for imposition of the sentences set forth in subdivision 1, the provisions in subdivision 2 of section 609.10 provide any separate authorization needed with respect to restitution. This is so because in subdivision 2, the Legislature defined what the district court could include when ordering restitution. *See* Minn. Stat. § 609.10, subd. 2(a)(1) (noting that " 'restitution includes' ... payment of compensation to the victim or the victim's family"). Subdivision 2 therefore operates like other substantive sentencing statutes, which define the maximum sentence the court can impose for enumerated offenses. *See, e.g.,* Minn.Stat. § 609.24 (noting that a person convicted of the crime of simple robbery "may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both"). Subdivision 2 does not set a maximum in terms of dollar amounts, but it constrains the district court in a way similar to a statutory maximum in that it defines for what a court may award restitution.

**3.** The Legislature enacted Minn.Stat. ch. 611A in the 1980s when states began to recognize the need to expand rights and services for crime victims. *See, e.g.,* David E. Aaronson, *New Rights and Remedies: The Federal Crime Victims' Rights Act of 2004,* 28 Pace L.Rev. 623, 626 (2008) ("Throughout the first stage [of the victims' rights movement], occurring approximately from the early 1970s through the early 1980s, crime victims' rights advocates sought statutory recognition of new rights, including the right to restitution...."); Jay M. Zitter, Annotation, *Validity, Construction, and Application of State Constitutional or Statutory Victims' Bill of Rights,* 91 A.L.R.5th 343, 364 (2001) ("[A]lmost all states have enacted a wide variety of constitutional and statutory provisions under the rubric of victims' rights, which clauses have often been enacted by wide majorities."). One of the "central component[s]" of these statutes was the right of victims to request restitution from the defendant. Matthew Dickman, Comment, *Should Crime Pay?: A Critical Assessment of the Mandatory Victims Restitution Act of 1996,* 97 Cal. L.Rev. 1687, 1687 (2009).

does not prevent a court from considering or awarding restitution in the absence of a victim's request for restitution.

This plain-meaning interpretation of section 611A.04 is consistent with our prior holding that courts must have some factual basis for making a restitution award. *See State v. Fader*, 358 N.W.2d 42, 48 (Minn. 1984) (holding that remand for reconsideration on restitution award was appropriate when the record provided no factual basis for a $10,000 restitution order for first-degree criminal sexual conduct). Section 611A.04, subdivision 1, requires courts to request information from victims because victims are in the best position to decide if they have experienced any economic loss that resulted from the crime and that has not been brought to the court's attention. But this does not mean, as Gaiovnik asserts, that district courts rarely have enough information to make factual determinations on restitution when victims do not provide the court with information. Instead, as this case indicates, the record itself can contain a sufficient amount of information to provide a factual basis for an award of restitution.[4]

Section 611A.045 also supports the plain-language interpretation that the Legislature intended to give district courts statutory authority to order restitution to a victim even when the victim does not request restitution. Specifically, section 611A.045, subdivision 1(a), provides the criteria courts must follow when ordering restitution. And, under this subdivision, "[t]he court, in determining whether to order restitution and the amount of the restitution, shall consider" the amount of the victims' economic loss and the resources the defendant has available to pay. *Id.* Importantly, the Legislature did not include a victim's request for restitution among the factors the court was required to consider before ordering restitution.

In addition to his reliance on sections 611A.04 and 611A.045, Gaiovnik also relies on our recent case law addressing restitution awards to support his contention that there must be a request for restitution from a victim before a district court can order restitution. Gaiovnik argues that we have "recently noted the importance of the . . . procedural requirements [set forth in sections 611A.04 and 611A.045]." He relies heavily on our recent decision in *In re Welfare of H.A.D.*, 764 N.W.2d 64 (Minn. 2009), to support his argument that there must be a request for restitution from a victim before the district court can award restitution. In *H.A.D.*, we considered whether the juvenile court lacked the authority to order restitution pursuant to section 611A.04. 764 N.W.2d at 64. H.A.D. was on probation for assaulting another

4. The fact that district courts had the authority to order restitution in the absence of a victim's request prior to the enactment of chapter 611A reinforces our conclusion. In 1977, the Legislature authorized restitution as a permissible sentence when the district court stayed imposition or execution of sentence for a felony offense. Act of June 2, 1977, ch. 355, § 6, 1977 Minn. Laws 765, 766 (codified in Minn.Stat. § 609.135 (2010)). The Legislature then enacted section 611A.04 in 1983 granting crime victims the right to request restitution from a defendant. Act of June 6, 1983, ch. 262, § 4, 1983 Minn. Laws 1125, 1127 (codified in Minn.Stat. § 611A.04). The following year, in 1984, the Legislature expanded the use of restitution by giving district courts statutory authority to

(Footnote continued from previous page.)
order restitution as a permissible sentence when the court sentenced a defendant to either imprisonment or payment of a fine, or both. Act of May 2, 1984, ch. 610, § 1, 1984 Minn. Laws 1467, 1467 (codified at Minn. Stat. § 609.10, subd. 1(a)(5)). There is no language in chapter 611A indicating that the Legislature intended to remove district courts' existing authority to order restitution in the absence of a victim's request when it enacted chapter 611A.

juvenile. *Id.* at 65. While on probation, ACS Recovery Services, Blue Cross Blue Shield, and the victim's mother each filed affidavits requesting the court to award them restitution. *Id.*

Gaiovnik's reliance on *H.A.D.* is misplaced. Gaiovnik asserts that because we emphasized in *H.A.D.* the "failure to follow the statute's clear procedures ... [,] this Court should hold that a court can order restitution only when the process for requesting restitution by the victim is followed." But we did not hold or discuss whether district courts need a request from a victim before they can order restitution. Instead, we determined that the juvenile court did not have statutory authority to order restitution because the court ordered restitution after H.A.D.'s probation had ended. *Id.* at 67.

Alternatively, we noted that even if the juvenile court ordered restitution prior to the end of probation, the court did not follow the statutory procedures set forth in section 611A.04 because it did not obtain information from the victims at least three days prior to the dispositional hearing. 764 N.W.2d at 66–67. We explained, "The restitution statute makes plain that a court may order restitution at the dispositional hearing, provided that 'all information regarding restitution [is] received by the court ... at least three business days before the ... dispositional hearing.' " *Id.* at 66 (quoting Minn.Stat. § 611A.04, subd. 1(a)). *H.A.D.* is distinguishable from the current case because in *H.A.D.*, victims made requests for restitution. The procedures set forth in sections 611A.04, subdivision 1, were therefore necessary to allow H.A.D. to receive notice of these restitution requests and an opportunity to respond to these requests.

Gaiovnik contends that "[i]t would be an odd state of affairs that a defendant has fewer rights when no request is made by the potential victim than in the situation where the potential victim follows the detailed provisions of section 611A.04." But in this case, Gaiovnik was on notice prior to and during trial that the amount allegedly stolen was $19,200. Both Gaiovnik and the district court were aware of Hollister's loss, and Gaiovnik has never contested the amount of the loss. The uncontested record provides the factual basis for the award, and Gaiovnik does not argue otherwise. *See Fader*, 358 N.W.2d at 48 (explaining that courts need a factual basis to order restitution).

In sum, the plain language of Minn.Stat. § 609.10 and Minn.Stat. §§ 611A.04 and 611A.045 indicate that a district court's authority to award restitution is not limited to only the circumstance where the victim requests restitution. We therefore hold that the district court did not err in ordering Gaiovnik to pay restitution to Hollister as part of his sentence.

Affirmed.