Warren LIMMER, Steve Gottwalt, Dan Hall, Steve Drazkowski, Sean Nienow, Paul Gazelka, Julianne Ortman, Peggy Scott, Michelle Benson, Ernie Leidiger, Bob Dettmer, Glenn Gruenhagen, Bob Gunther, Joyce Peppin, and Mike Benson, all individuals, registered voters, and Members of the Minnesota Legislature; John Helmberger, an individual and a registered voter; and Minnesota for Marriage, an association of individuals and registered ballot committee, Petitioners (A12–1149),

v.

Mark RITCHIE, in his official capacity as Secretary of State of the State of Minnesota, and Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, Respondents (A12–1149);

v.

Mark Ritchie, in his official capacity as Secretary of State of the State of Minnesota, and Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, Respondents (A12–1258).

Nos. A12–1149, A12–1258.

Supreme Court of Minnesota.

Aug. 27, 2012.

Erick Kaardal, Mohrman Kaardal, P.A., Minneapolis, MN, Austin R. Nimocks, Jordan Lorence, Alliance Defending Freedom, Cleta Mitchell, ActRight Legal Foundation, Washington, D.C., Kaylan L. Phillips, Eric C. Bohnet, Zachary S. Kester, Noel H. Johnson, Plainfield, IN, for petitioners.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kristyn Anderson, Michael Everson, Assistant Attorneys General, Saint Paul, MN, for respondents.

James S. Ballentine, Schwebel, Goetz and Sieben, Minneapolis, MN, Teresa S. Collett, Minneapolis, Minnesota, for amici curiae Matt Dean and David Senjem.

Bruce D. Manning, Laura E. Nelson, Jamie R. Kurtz, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for amici curiae Mary Patricia Byrn, Dale Carpenter, Marie Failinger, Claire Hill, Jonathan Kahn, Peter Knapp, Mehmet Konar–Steenberg, Raleigh Levine, Brett McDonnell, William McGeveran, Fred Morrison, Mary Jane Morrison, Myron Orfield, Mark Osler, Richard Painter, Ted Sampsell–Jones, and Eileen Scallen; and Brian Bix and Daniel S. Kleinberger.

William Z. Pentelovich, Justin H. Perl, Wayne S. Moskowitz, Alain M. Baudry, Catherine Ahlin–Halverson, Jesse D. Mondry, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for amici curiae American Civil Liberties Union of Minnesota, Common Cause, and Jewish Community Action.

## OPINION

PER CURIAM.

In these two cases, petitioners, members of the Minnesota Legislature and others, filed petitions pursuant to Minn.Stat. § 204B.44 (2010). Petitioners seek an order requiring respondent Mark Ritchie, the Minnesota Secretary of State, to use the titles designated by the Minnesota Legislature for two proposed constitutional amendment ballot questions that will appear on the November 2012 general election ballot. Petitioners contend that by failing to use the title designated by the Legislature for each ballot question, respondents have failed to comply with the statutory requirement to "provide an appropriate title" for the ballot question, Minn.Stat. § 204D.15, subd. 1 (2010), and have erred in the preparation of the ballot. See Minn.Stat. § 204B.44 (a), (b), (d). We conclude that when the Legislature has included a title for a ballot question in the bill proposing a constitutional amendment, the "appropriate title" the Secretary of State must provide for that ballot question is the title designated by the Legislature. As a result, the Secretary of State exceeded his authority under Minn.Stat. § 204D.15, subd. 1, when he provided titles for the ballot questions different from those passed by the Legislature. We therefore grant the petitions, and order the Secretary of State to use the titles set forth in Ch. 88, § 2(b), 2011 Minn. Laws 364 (Case No. 12–1149), and in Ch. 167, § 2(b), 2012 Minn. Laws 145–46 (Case No. 12–1258).[1]

*Marriage Amendment (No. 12–1149)*

The facts giving rise to the petition involving the proposed marriage amendment are undisputed. In May 2011 the Legislature approved a proposed amendment to Article XIII of the Minnesota Constitution that would add the following language to the constitution: "Only a union of one man and one woman shall be valid or recognized as a marriage in Minnesota." Ch. 88, § 1, 2011 Minn. Laws 364, 364. The Legislature also approved the language of the question to be placed on the November 2012 ballot regarding the proposed amendment: "Shall the Minnesota Constitution be amended to provide that only a union of one man and one woman shall be valid or recognized as a marriage in Minnesota?" *Id.* § 2(a), 2011 Minn. Laws at 364. Finally, the Legislature approved a title for the ballot question: "The title required under Minnesota Statutes, section 204D.15, sub-

---

1. We consolidated these cases for oral argument by order of July 26, 2012, *Limmer v. Ritchie,* Order (Minn. filed July 26, 2012), and consolidated the cases for purposes of decision by order of August 22, 2012, *Limmer v. Ritchie,* Order (Minn. filed August 26, 2012).

division 1, for the question submitted to the people under paragraph (a) shall be 'Recognition of Marriage Solely Between One Man and One Woman.'" *Id.* § 2(b), 2011 Minn. Laws at 364. Chapter 88, which contains the proposed constitutional amendment, ballot question, and ballot question title, was presented to Governor Mark Dayton.

On May 25, 2011, the Governor sent a letter to Senator Michelle Fischbach, the President of the Minnesota Senate, stating that he had "vetoed and [was] returning Chapter 88, Senate File 1308." Governor Dayton referred to his veto as "symbolic," but he also stated that he "was exercising [his] legal responsibility to either sign it or veto it."

On June 15, 2012, the Secretary of State sent a letter to Attorney General Lori Swanson, explaining that pursuant to Minn.Stat. § 204D.15, subd. 1, he had chosen a title for the ballot question regarding the proposed marriage amendment. The Secretary indicated that the title he had chosen to appear on the ballot with the Legislature's ballot question, and that he was "submit[ting] for [her] approval," was "Limiting the Status of Marriage to Opposite Sex Couples." The Attorney General "approved" the title proposed by the Secretary in a letter dated June 19, 2012.

### Voter Identification (No. 12–1258)

The facts giving rise to the petition involving the proposed voter identification amendment are also undisputed. In April 2012 the Legislature approved a proposed amendment to Article VII, Section 1 of the Minnesota Constitution that would add the following two subsections:

(a) Every person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct. The place of voting by one otherwise qualified who has changed his residence within 30 days preceding the election shall be prescribed by law. The following persons shall not be entitled or permitted to vote at any election in this state: A person not meeting the above requirements; a person who has been convicted of treason or felony, unless restored to civil rights; a person under guardianship, or a person who is insane or not mentally competent.

(b) All voters voting in person must present valid government-issued photographic identification before receiving a ballot. The state must issue photographic identification at no charge to an eligible voter who does not have a form of identification meeting the requirements of this section. A voter unable to present government-issued photographic identification must be permitted to submit a provisional ballot. A provisional ballot must only be counted if the voter certifies the provisional ballot in the manner provided by law.

(c) All voters, including those not voting in person, must be subject to substantially equivalent identity and eligibility verification prior to a ballot being cast or counted.

Ch. 167, § 1, 2012 Minn. Laws 145–46 (additions underlined).

In the same session law, the Legislature also approved the language of the question to be placed on the November 2012 ballot regarding the proposed constitutional amendment:

Shall the Minnesota Constitution be amended to require all voters to present valid photo identification to vote and to require the state to provide free identification to eligible voters, effective July 1, 2013?

*Id.* § 2(a), 2012 Minn. Laws at 146. Finally, the Legislature approved a title for the ballot question: "Photo Identification Required for Voting." *Id.* § 2(b), 2012 Minn. Laws at 146.[2]

The bill containing the proposed constitutional amendment, ballot question, and ballot question title was presented to Governor Mark Dayton, who vetoed it. The Governor's letter acknowledged that he did "not have the power to prevent this unwise and unnecessary Constitutional Amendment from appearing on the Minnesota ballot in November...." The Governor stated, however, that he was "exercising [his] legal responsibility to either sign or veto the amendment[,]" and that he was "vetoing the amendment and its title...."

Thereafter, Secretary of State Mark Ritchie asked Attorney General Lori Swanson to review and approve the following title for the ballot question pertaining to the proposed voter identification amendment: "Changes to In–Person & Absentee Voting & Voter Registration; Provisional Ballots." The Attorney General "approved" the title in a letter dated July 6, 2012.

## I.

The parties present a number of arguments that raise constitutional issues and issues of statutory construction. Petitioners contend that because proposing a constitutional amendment to the voters, including the form of the ballot question for such a proposed amendment, is exclusively a legislative function under Article IX of the Minnesota Constitution, the Legislature's approved title for a ballot question for such a proposed amendment is part of the ballot measure itself. Petitioners therefore urge us to construe section 204D.15 to require the Secretary of State to "provide" the title designated by the Legislature when the Legislature has designated one with a proposed constitutional amendment. In essence, petitioners contend that the Secretary has no discretion to choose a ballot title unless the Legislature fails to provide one.

Respondents agree the Legislature has the constitutional authority to propose constitutional amendments. But respondents contend, in essence, that this authority is implemented as provided by state law. Respondents assert that the Legislature validly delegated the exclusive authority to provide and approve a title for ballot questions to the Secretary of State and the Attorney General in 1919. Respondents argue that the Secretary of State and the Attorney General properly exercised their statutory authority here—indeed, were required to do so—when the Secretary provided, and the Attorney General approved, titles for the ballot questions with respect to the proposed marriage and voter identification amendments.

Respondents also note that for almost 100 years, ballot questions that propose constitutional amendments have been, by statutory directive, accompanied by a ballot title. *See* Act of Mar. 18, 1919, ch. 76, § 1, 1919 Minn. Laws 72, 73 (now codified as amended at Minn.Stat. § 204D.15 (2010)). Through this statutory authority, the Legislature has directed the Secretary of State to provide the ballot question title with the provided title approved by the Attorney General.[3] More specifically, the

---

**2.** On May 30, 2012, a petition was filed with this court under Minn.Stat. § 204B.44, seeking to "strik[e] the ballot question pertaining to the Voter Identification and Provisional Ballot Amendment" and to enjoin the Secretary of State from placing the question on the November 2012 general election ballot. We denied that petition. *See League of Women Voters v. Ritchie,* 819 N.W.2d 636 (Minn. 2012).

**3.** Until 1981, the Secretary was required to "apply" an appropriate title. Minn.Stat.

Secretary of State shall "provide an appropriate title for each question printed on the [constitutional amendment] [4] ballot. The title shall be approved by the attorney general, and shall consist of not more than one printed line above the question to which it refers." Minn.Stat. § 204D.15, subd. 1. Respondents argue that under the plain language of section 204D.15, the titles chosen by the Secretary of State and approved by the Attorney General are the titles that must appear on the ballot for the two constitutional amendments at issue.

The parties agree that the Minnesota Constitution vests in the Legislature the power to propose constitutional amendments to the people. Article IX, Section 1 of the Minnesota Constitution grants the Legislature this power:

A majority of the members elected to each house of the legislature may propose amendments to this constitution. Proposed amendments shall be published with the laws passed at the same session and submitted to the people for their approval or rejection at a general election.

We have held that the Legislature has discretion in deciding the form and manner of placing proposed constitutional amendments before voters. *See, e.g., Breza v. Kiffmeyer,* 723 N.W.2d 633, 636 (Minn. 2006) ("[T]he form and manner of submitting the question of a constitutional amendment to the people 'are left to the judgment and discretion of the legislature....'") (quoting *State ex rel. Marr v. Stearns,* 72 Minn. 200, 218, 75 N.W. 210, 214 (1898)); *Wass v. Anderson,* 312 Minn.

394, 399, 252 N.W.2d 131, 135 (1977) (noting, in a challenge to an amendment based on the alleged violation of the single subject rule, the concession "that the constitution imposes no requirement as to the form a proposed constitutional amendment must take," and that while preferable to propose amendments separately, that decision "is a matter addressed to legislative discretion"); *Winget v. Holm,* 187 Minn. 78, 85, 244 N.W. 331, 334 (1932) ("Since the Legislature is invested with the power to propose amendments, their scope and form must be left to it within reasonable limits.").

■ Our precedent has also "recognized that where the constitution commits a matter to one branch of government, the constitution prohibits the other branches from ... interfering with the coordinate branch's exercise of its authority." *In re Civil Commitment of Giem,* 742 N.W.2d 422, 429 (Minn.2007); *see also State ex rel. Birkeland v. Christianson,* 179 Minn. 337, 340, 229 N.W. 313, 314 (1930) (explaining that no branch of government "can control, coerce or restrain the action or nonaction of either of the others in the exercise of any official power or duty conferred by the constitution"). This separation of powers principle is grounded in the Minnesota Constitution, which prohibits one branch of government from exercising "any powers properly belonging to either of the other[ ] [branches] except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1; *see also Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 437–38 (Minn.2009) (discussing the "constitutional principle of separation of powers"). There

---

§ 203A.31, subd. 2 (1980). This statute was amended in 1981 and recodified at Minn.Stat. § 204D.15, subd. 1 (2010), with the current language. *See* Act of Apr. 14, 1981, ch. 29, art. 6, § 15, 1981 Minn. Laws 38, 127.

4. The statute refers to the pink ballot, which is the ballot on which questions for proposed constitutional amendments appear. Minn. Stat. § 204D.15, subd. 1; *see also* Minn.Stat. § 204D.15, subd. 2 (describing the pink ballot).

is no dispute in this case that the constitution does not specifically provide a role for the Executive Branch in the amendment process.

The parties' dispute here centers on statutory interpretation—the extent of the Secretary of State's authority under Minn. Stat. § 204D.15, subd. 1, to provide a ballot title different from that designated by the Legislature in the bill approving the ballot question for a proposed constitutional amendment. We conclude, as explained below, that the language of Minn.Stat. § 204D.15, subd. 1, does not authorize the Secretary of State to provide a title for a ballot question for a proposed constitutional amendment that is different from the title chosen by the Legislature in the bill accompanying the proposed amendment.

## II.

We do not need to decide in this case whether, as petitioners contend, the Legislature has exclusive authority under Article IX to designate a ballot title for a proposed constitutional amendment. Indeed, it may be that, when the Legislature has not adopted a title for a proposed constitutional amendment, there is room for the Executive Branch to act in this area under Minn.Stat. § 204D.15. But when the Legislature has acted and chosen the title, a difficult constitutional confrontation is presented if we were to conclude, as respondents argue, that the title provided by the Executive Branch supersedes the title enacted by the Legislature as part of its authority to determine "the form and manner of submitting" proposed amendments to the people. *Breza,* 723 N.W.2d at 636. Allowing the Secretary of State, an Executive Branch Officer with no constitutional authority over the form and manner of proposed constitutional amendments, to simply ignore the Legislature's action in proposing and passing a title to accompany a ballot question on a constitutional amendment potentially risks interfering with the Legislature's constitutional authority.

■ We need not resolve that thorny separation of powers problem here, however, because "we are to construe statutes to avoid a constitutional confrontation if it is possible to do so." *State v. Gaiovnik,* 794 N.W.2d 643, 648 (Minn.2011); *see also Giem,* 742 N.W.2d at 429 ("We have held that if we can construe a statute to avoid a constitutional confrontation, we are to do so."); *In re Harhut,* 385 N.W.2d 305, 313 (Minn.1986) ("Again, we employ the principle that this court must construe a statute in such a way as to avoid constitutional conflict."). We do so "even if the construction that avoids a constitutional confrontation is the 'less natural' construction" so long as the construction is a reasonable one. *Gaiovnik,* 794 N.W.2d at 648 (quoting *State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 363 (Minn.1980)); *see also Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 18 (Minn.2005) (interpreting a statute in a manner that was inconsistent with its plain language in order to avoid the conclusion that statute violated the Commerce Clause).

We turn then to the relevant language of the statute in question, Minn.Stat. § 204D.15. The Secretary of State's statutory obligation is to "provide an appropriate title for each question printed" on the constitutional amendment ballot. "Provide" and "appropriate" are broad terms. "Provide" means to "prepare, get ready," or "arrange (something) beforehand." *The New Shorter Oxford English Dictionary* 2393 (4th ed.1993); *see also Webster's New International Dictionary* 1827 (3rd ed.1961) (defining "provide" as "to make ready;" "to procure in advance; get ready beforehand; prepare" or "to fit out or fit up; equip" or "to supply for use; afford;

yield"). "Appropriate" means "suitable for the purpose and circumstances; befitting the place or occasion." *Funk & Wagnalls New Standard Dictionary of the English Language* 140 (1945); *see also American Heritage Dictionary of the English Language* 88 (5th ed.2011) (defining "appropriate" as "suitable for a particular person, condition, occasion, or place; fitting"). Neither of these terms clearly indicate that the Secretary has the exclusive authority to determine or establish the title for a ballot question.

Rather, these terms reasonably suggest that the Secretary's statutory obligation is to prepare the ballot before the election by ensuring that a suitable title is included on the ballot. This conclusion does not fully answer the issue presented, however, because an "appropriate" or suitable title could be construed to mean the title designated by the Legislature, or the title chosen by the Secretary.[5]

■ Our precedent directs that we are to use the construction of the statute that avoids a constitutional problem when such a construction is reasonable. *See, e.g., Giem,* 742 N.W.2d at 430 (describing "our mandate to construe statutes, if possible, to avoid constitutional infirmities"). Consistent with this precedent, and in order to avoid the separation of powers problem discussed above, we conclude that when the Legislature passes a title for the ballot question in the legislation adopting a proposed constitutional amendment, that is the "appropriate title" the Secretary of State must provide under Minn.Stat. § 204D.15, subd. 1.[6]

■ Based on our construction of Minn. Stat. § 204D.15, subd. 1, we hold that the Secretary of State erred and exceeded his authority when he provided titles for the ballot questions on the proposed marriage and voter identification amendments different from the titles chosen by the Legis-

---

**5.** As noted by one of the amici, prior to 2008, the Legislature did not designate a title for the ballot questions proposing constitutional amendments, leaving that task to the Secretary of State. In 2008 the Legislature proposed a constitutional amendment and included a title in the bill that proposed the constitutional amendment. Ch. 151, § 2(b), 2008 Minn. Laws 35–36. The Secretary of State provided the Legislature's title on the ballot. *See Example Ballots,* Minnesota Office of the Secretary of State, http://www.sos.state.mn.us/index.aspx?page=227 (last visited Aug. 24, 2012) (providing a link to a sample ballot from the 2008 general election containing the constitutional amendment and the Legislature's title). The parties acknowledge that the history of Minnesota's ballot questions on constitutional amendments shows that sometimes the Legislature has provided the title, and sometimes the Secretary of State has provided the title. *See State Constitutional Amendments Considered,* Minnesota Legislative Reference Library, http://www.leg.state.mn.us/lrl/mngov/constitutionalamendments.aspx (last visited Aug. 24, 2012) (listing all constitutional amendments proposed by the

legislature between 1858 and 2012). Thus, the "appropriate" title is, as its plain meaning suggests, "suitable for the purpose and circumstances." Here, the purpose and surrounding circumstances include the Legislature's decision to designate a title to be used with the ballot question. Had the Legislature not designated a ballot title, a title provided by the Secretary may be an "appropriate" title. But in the absence of statutory language clearly stating that the authority to choose the title for a ballot question rests solely with the Secretary of State, we conclude that a title designated by the Legislature for a ballot question in the bill proposing the constitutional amendment is the only "appropriate" title.

**6.** The dissent of Justice Page posits a hypothetical involving a constitutional amendment that would "reinstate prohibition" with a legislatively enacted ballot title, "Eliminating the Personal Income Tax." We need not decide in this case the outer limits, if any, of the legislative authority regarding the titling of ballot questions for proposed constitutional amendments.

lature. Instead, the appropriate titles the Secretary of State must provide are the titles passed by the Legislature in Chapter 88, section 2(b), 2011 Minn. Laws 364, and in Chapter 167, section 2(b), 2012 Minn. Laws 145–46.

IT IS HEREBY ORDERED THAT:

1. The petition of Warren Limmer, et al., is granted in No. 12–1149 to the extent that it seeks an order directing the Secretary of State to provide the following title for the ballot question related to the proposed constitutional amendment defining marriage that will appear on the 2012 general election ballot: "Recognition of Marriage Solely Between One Man and One Woman"; and

2. The petition of Mary Kiffmeyer, et al., is granted in No. 12–1258 to the extent that it seeks an order directing the Secretary of State to provide the following title for the ballot question related to the proposed constitutional amendment on voter identification that will appear on the 2012 general election ballot: "Photo Identification Required for Voting"; and

3. The Secretary of State is directed to place on the ballot the following title for the ballot question related to the proposed constitutional amendment defining marriage that will appear on the 2012 general election ballot: "Recognition of Marriage Solely Between One Man and One Woman"; and

4. The Secretary of State is directed to place on the ballot the following title for the ballot question related to the proposed constitutional amendment on voter identification that will appear on the 2012 general election ballot: "Photo Identification Required for Voting."

PAGE, Justice (dissenting).

Today, the court announces a fundamentally flawed interpretation of Minn.Stat. § 204D.15, subd. 1 (2010), in order to avoid a nonexistent constitutional conflict. Therefore, I respectfully dissent.

In May 2011 the Legislature approved a proposed amendment to Article XIII of the Minnesota Constitution that would add to the constitution the following language: "Only a union of one man and one woman shall be valid or recognized as a marriage in Minnesota." Ch. 88, § 1, 2011 Minn. Laws 364, 364. At the same time, the Legislature approved the language of the question to be placed on the November 2012 ballot regarding the proposed amendment: "Shall the Minnesota Constitution be amended to provide that only a union of one man and one woman shall be valid or recognized as a marriage in Minnesota?" *Id.* § 2(a), 2011 Minn. Laws at 364. Finally, the Legislature approved a title for the ballot question: "The title required under Minnesota Statutes, section 204D.15, subdivision 1, for the question submitted to the people under paragraph (a) shall be 'Recognition of Marriage Solely Between One Man and One Woman.'" *Id.* § 2(b), 2011 Minn. Laws at 364.

Minnesota Statutes § 204D.15, subd. 1, requires the Secretary of State to "provide an appropriate title for each question printed on the ... ballot. The title shall be approved by the attorney general, and shall consist of not more than one printed line above the question to which it refers." On June 15, 2012, the Secretary of State notified the Attorney General that he had chosen the following title for the ballot question regarding the proposed marriage amendment: "Limiting the status of marriage to opposite sex couples." On June 19, 2012, the Attorney General approved the title chosen by the Secretary of State.

In April 2012 the Legislature approved a proposed amendment to Article VII, Section 1, of the Minnesota Constitution that would add the following two subsections:

(a) Every person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct. The place of voting by one otherwise qualified who has changed his residence within 30 days preceding the election shall be prescribed by law. The following persons shall not be entitled or permitted to vote at any election in this state: A person not meeting the above requirements; a person who has been convicted of treason or felony, unless restored to civil rights; a person under guardianship; or a person who is insane or not mentally competent.

(b) All voters voting in person must present valid government-issued photographic identification before receiving a ballot. The state must issue photographic identification at no charge to an eligible voter who does not have a form of identification meeting the requirements of this section. A voter unable to present government-issued photographic identification must be permitted to submit a provisional ballot. A provisional ballot must only be counted if the voter certifies the provisional ballot in the manner provided by law.

(c) All voters, including those not voting in person, must be subject to substantially equivalent identity and eligibility verification prior to a ballot being cast or counted.

Ch. 167, § 1, 2012 Minn. Laws 145, 145–46 (additions underlined). At the same time, the Legislature also approved the language of the question to be placed on the November 2012 ballot regarding the proposed constitutional amendment: "Shall the Minnesota Constitution be amended to require all voters to present valid photo identification to vote and to require the

state to provide free identification to eligible voters, effective July 1, 2013?" *Id.* § 2(a), 2012 Minn. Laws at 146. Finally, the Legislature approved a title for the ballot question: "The title required under Minnesota Statutes, section 204D.15, subdivision 1, for the question submitted to the people under paragraph (a) shall be: 'Photo Identification Required for Voting.'" *Id.* § 2(b), 2012 Minn. Laws at 146.

On July 3, 2012, the Secretary of State notified the Attorney General that he had chosen the following title for the ballot question regarding the proposed amendment: "Changes to In–Person & Absentee Voting & Voter Registration; Provisional Ballots." On July 6, 2012, the Attorney General approved the Secretary of State's chosen title.

In proposing their competing titles for the two proposed constitutional amendments, both the Legislature and the Secretary of State acted under Minn.Stat. § 204D.15, subd. 1, which provides:

The secretary of state shall provide an appropriate title for each question printed on the [constitutional] ballot. The title shall be approved by the attorney general, and shall consist of not more than one printed line above the question to which it refers. At the top of the ballot just below the heading, a conspicuous notice shall be printed stating that a voter's failure to vote on a constitutional amendment has the effect of a negative vote.

The plain language of section 204D.15 requires the Secretary of State to "provide an appropriate title" for each of the questions on the constitutional ballot.

The court refuses to apply the plain language of section 204D.15 for fear of triggering a constitutional crisis. The constitutional conflict, as the court sees it, necessarily arises because the Legislature approved titles for these ballot questions

as part of its authority under Article IX to determine "the form and manner" of submitting proposed constitutional amendments to the people. Therefore, in the court's view, to read section 204D.15 to allow the Secretary of State to choose a title different from that approved by the Legislature violates the separation of powers. I disagree with both propositions.

The Legislature cannot delegate pure legislative power. *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters,* 276 N.W.2d 42, 45 (Minn.1979) (citing *Lee v. Delmont,* 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949)). Therefore, if what the plain language of section 204D.15 delegates to the Secretary of State—the responsibility for providing a title for a ballot question—and to the Attorney General—the responsibility for approving the title—is pure legislative power, then section 204D.15 violates the separation of powers.

But in proposing constitutional amendments the Legislature does not act under its legislative power. *See In re Opinion of the Justices,* 118 Me. 544, 107 A. 673, 674 (1919) (noting that in proposing amendments to the United States Constitution, Congress "strictly speaking, [is not] acting in the exercise of ordinary legislative power. It is acting in behalf of and as the representative of the people of the United States under the power expressly conferred by article 5 [of the United States Constitution]"); *State ex rel. McKittrick v. Kirby,* 349 Mo. 988, 163 S.W.2d 990, 993 (1942) (noting that "it has been universally held that the legislature, in proposing an

amendment [to the constitution], is not exercising its ordinary legislative power but is acting as a special organ of government for the purpose of constitutional amendment" and collecting cases). If proposing constitutional amendments were part of the Legislature's legislative function, its authority to do so would be inherent in Article IV of the constitution and no separate authority (such as Article IX) would be required. As the Maine Supreme Judicial Court has observed in the context of amendments to the United States Constitution:

> The people, through their Constitution, might have designated some other body than the two houses or a national constitutional convention as the source of proposals. They might have given such power to the President, or to the Cabinet, or reserved it in themselves; but they expressly delegated it to Congress or to a constitutional convention.

*Opinion of the Justices,* 107 A. at 675. Nor is proposing titles for ballot questions an exercise of pure legislative power. Titles for ballot questions are not laws.

Although the Legislature cannot delegate its pure legislative power, nothing prevents the Legislature from delegating other powers. *See, e.g., Lee v. Delmont,* 228 Minn. 101, 113, 36 N.W.2d 530, 538 (1949). Since 1919, the Legislature has delegated to the Secretary of State the responsibility for providing titles for ballot questions, subject to the approval of the Attorney General. Act of Mar. 18, 1919, ch. 76, § 1, 1919 Minn. Laws 72, 73.[1] It

---

1. As initially enacted, the statute read: "In preparing said pink ballot the secretary of state shall apply an appropriate designation or title, to each such proposition and question, which designation or title shall be approved by the attorney general." Act of Mar. 18, 1919, ch. 76, § 1, 1919 Minn. Laws 72, 73. The initial statutory language was amended in 1959 to eliminate the word "des-

ignation." Act of Apr. 24, 1959, ch. 675, art. 4, § 28, 1959 Minn. Laws 1145, 1154. In 1981, the election laws were recodified and Minn.Stat. § 204D.15, subd. 1, was enacted with the current language, changing the Secretary's obligation from "apply" an appropriate title to "provide" an appropriate title. Act of Apr. 14, 1981, ch. 29, art. 6, § 15, 1981

was under the authority of Minn.Stat. § 204D.15, subd. 1, that the Secretary of State proposed, and the Attorney General approved, the two titles at issue here.

Not only does the court wrongly claim the need to avoid a nonexistent constitutional conflict, its resulting interpretation of section 204D.15, subdivision 1, is simply nonsensical. If, as the court necessarily assumes, the Legislature's power to propose a ballot title is part of its exclusive authority "to determine 'the form and manner of submitting' proposed amendments to the people," then section 204D.15 is unconstitutional *all the time*, not just when the Legislature itself fails to exercise its "exclusive authority."

Moreover, according to the court, "when the Legislature passes a title for the ballot question in the legislation adopting a proposed constitutional amendment, that is the 'appropriate title' the Secretary of State must provide, under Minn.Stat. § 204D.15, subd. 1." In other words, in the court's view *any* title the Legislature approves for a ballot question is appropriate, regardless of whether it accurately reflects the nature of either the ballot question or the proposed amendment itself. Under the court's view a majority of the Legislature could propose a constitutional amendment to, say, reinstate prohibition, propose the ballot title "Eliminating the Personal Income Tax," the Secretary of State would be obligated to put the Legislature's title on the ballot, and under the standard the court announces today, this court could do nothing to prevent it. That is a result I cannot countenance.

I respectfully dissent.

ANDERSON, PAUL H., J. (dissenting).

I join in the dissent of Justice Page.

Minn. Laws 120, 127 (codified at Minn.Stat.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. I agree with most of what Justice Page has said in his dissent, but I write separately for two reasons. The first is to articulate a different basis for my disagreement with the majority's analysis. The second is to underscore my conclusion that, much like in *League of Women Voters v. Ritchie*, 819 N.W.2d 636 (Minn.2012), the majority fails to provide a sound foundation for its holding. There is a sequence of events here that, when reduced to its essentials, unequivocally leads me to conclude that the majority's holding is wrong. Therefore, I cannot join the majority opinion.

What power the Legislature has falls under its general legislative powers, and must be exercised within the scope of other provisions in the Minnesota Constitution, in particular Article IV. Article IV defines the path the Legislature is required to follow when it creates an ordinary legislative act: the Legislature must first pass a bill through both houses and then submit the bill to the Governor for the Governor's consent. If the Governor consents through his signature, the bill becomes law. If the Governor does not consent—vetoes the bill—the bill can only become a law if two-thirds of the members of each house of the Legislature vote to override the veto. Minn. Const. art. IV, § 23. After examining the relevant provisions in the Minnesota Constitution, the starting point for my analysis becomes obvious—events that occurred in 1919.

In 1919, the Minnesota Legislature passed a bill, which was signed by the Governor, that requires the Minnesota Secretary of State to "provide an appropriate title," with the approval of the Attorney General, for ballot questions on pro-

§ 204D.15, subd. 1).

posed constitutional amendments. *See* Act of Mar. 18, 1919, ch. 76, § 1, 1919 Minn. Laws 72, 73 (now codified at Minn.Stat. § 204D.15). This law is binding on subsequent Legislatures until repealed or amended through the ordinary legislative process. *See Gudvangen v. Austin Mut. Ins. Co.*, 284 N.W.2d 813, 819 (Minn.1978) (" 'The opinion of a subsequent legislature upon the meaning of a statute, is entitled to no more weight than that of the same men in a private capacity.' " (quoting *Bingham v. Bd. of Supervisors of Winona Co.*, 8 Minn. 441, 448 (Gil. 390, 398) (1863))).

In April of this year, and May 2011, the current Legislature proposed two new constitutional amendments. In accordance with section 204D.15, subdivision 1, the Secretary of State then provided ballot titles for the two amendments. It appears that the Legislature initially acknowledged the import of section 204D.15, subdivision 1, when it presented its own versions of titles to the Governor for his approval in accordance with Article IV, but the Governor vetoed those titles.[1] The Legislature did not attempt to override the Governor's vetoes. The Legislature now plans to circumvent the process it mandated for itself in section 204D.15, subdivision 1, by placing its own titles on the November 2012 ballot.[2]

There are only two theories under which the Legislature can prevail: (1) the Legislature must find an unstated, inherent power under Article IX to place titles on the 2012 ballot—a theory which can only prevail by reading extra words into section 204D.15, subdivision 1; or (2) the original 1919 law is an unconstitutional delegation of authority from the Legislature to executive departments.

The first sentence of Article I of the Minnesota Constitution makes clear that the right to "alter, modify or reform government" belongs to and remains with the people of Minnesota. Article IX then delegates to the Legislature the role of proposing constitutional amendments; but that role is specifically defined and limited. The people reassert their primary role in this process by retaining, at a general election, the power of approving or rejecting the Legislature's proposed constitutional amendment.

The Legislature asks us to expand its limited role. Contrary to the plain language of the 1919 statute, that the Secretary of State is to "provide" an "appropriate title," the Legislature would have us read into the statute an additional requirement that the Secretary is to provide a title only if the Legislature has not already done so. But, such a requirement cannot be found in the plain language of section 204D.15, subdivision 1, or of any other statute, or the Constitution. Thus, the power the Legislature seeks to assert can only come from reading between the lines of the limited powers assigned to the Legislature.

As Justice Page points out in his separate dissent, the majority creates a nonexistent constitutional conflict and then uses this illusory conflict as a means to avoid applying longstanding principles for how we interact with the legislative and executive branches of government. As both Justice Page and I noted in *League of Women Voters v. Ritchie*, 819 N.W.2d 636 (Minn.2012), the majority reads Article IX

---

[1]. *See* Letter from Mark B. Dayton, Governor of Minn., to Michelle Fischbach, President of Minn. Senate (May 25, 2011); Letter From Mark Dayton, Governor of Minn., to Kurt Zellers, Speaker of the House, Minn. House of Representatives (Apr. 9, 2012).

[2]. It should not be lost on anyone that this process will now—based on the holding of our court—escape any scrutiny by either the executive or the judicial branch even if the title is inappropriate, inaccurate, misleading, or deceptive.

so broadly that, in the name of judicial deference, it grants to the Legislature inherent power the people did not grant to that body. Here, it appears that the majority not only concludes that the Legislature's "inherent" powers require an extraordinary level of deference from our court, as stated in *League of Women Voters*, but also our *proactive rewriting of a valid statute*. The latter premise is even more erroneous than the unprecedented deference the majority grants to the Legislature in *League of Women Voters*.

The second way the Legislature can prevail is if the 1919 statute is an unconstitutional delegation of legislative power. For this theory to prevail, the Constitution would have to be read to provide that proposing ballot question titles is a power exclusively mandated to the Legislature. As previously outlined, the role of the Legislature is limited. Nowhere in the Legislature's core powers, under Article IV, or the constitutional amendment process under Article IX, is such a mandate discussed. Amendments are controlled by Articles I and IX, and there are other limited roles for the Legislature in the electoral process in Article VII. Nothing here makes the constitutional amendment process the exclusive province of the Legislature.

If the 1919 statute had not been passed and section 204D.15, subdivision 1 did not exist, then the issue before our court would be quite different. If that were the case, then the question of which office of government—the Legislature or the Secretary of State—was responsible for drafting the title for proposed amendments would be a more open, and somewhat ambiguous question. If section 204D.15, subdivision 1 did not exist, and both the Legislature and the Secretary of State issued a title for the ballot question, *then* the constitutional conflict that the majority imagines would actually exist. Such a conflict might even exist if the Legislature and the Governor had approved a later statute that *implicitly* repealed the 1919 law, although implied repeals are generally rejected; because they are subject to a "relatively stringent standard." [3]

But, try as the current Legislature and the majority might to claim otherwise, section 204D.15, subdivision 1 is the law. The reasons why the 1919 Legislature passed section 204D.15, subdivision 1, are not at issue, nor is the constitutionality of the statute before us. The key point to be acknowledged is that, using its ordinary legislative power and acting under Article IV, the Legislature *did* enact section 204D.15, subdivision 1, a statute that is still the law in Minnesota. Nevertheless, the Legislature intends to circumvent this valid law by in effect rewriting it, and the majority affirms the Legislature's implicit revision of the statute. While we may agree or disagree with the 1919 Legislature's choice to empower executive officers in this way, the wisdom of that law is also not before us today. Whenever possible, we must defer to the public policy choices of the Legislature. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162 (1810). But we must also enforce any duly passed and executed law of the State of Minnesota. The Legislature bound itself when it passed the 1919 statute and the Governor

---

**3.** As Justice Antonin Scalia and legal writing expert Bryan Garner have written, "[r]epeals by implication are very much disfavored." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 327 (2012). Writing for the U.S. Supreme Court, Justice Clarence Thomas has agreed. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001) ("The rarity with which [the Court has] discovered implied repeals is due to the relatively stringent standard for such findings, namely, that there be an irreconcilable conflict between the ... [laws] at issue." (citation omitted)).

signed it into law. If the current Legislature disagrees with the policy choice of their predecessors, they are given a very clear way forward—follow Article IV, section 23 of the Constitution by passing a new law through both houses and then presenting it to the Governor for his signature.

Here, the Secretary of State has performed the duty imposed upon him by the Legislature. He has provided titles for the Legislature's proposed constitutional amendments, which titles have been approved by the Attorney General. While it is possible to quibble about the language used by the Secretary of State in his titles, neither the majority nor I conclude that his titles are *not* "appropriate." Therefore, after concluding that the law as embodied in section 204D.15, subdivision 1 is valid and must be followed, I would hold that the titles provided by the Secretary of State must appear on the November 6, 2012 general election ballot.