*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0264**

State of Minnesota,
Respondent,

vs.

Tetee Saryee d/b/a Zion Home Care, Inc.,
Appellant.

**Filed January 3, 2017
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-15-10750

Lori Swanson, Attorney General, Nicholas B. Wanka, Assistant Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Tetee Saryee, d/b/a Zion Home Care, Inc.,[1] appeals from her conviction of four counts of aiding and abetting theft by false representation. On appeal, she argues that she made no false representation and that the district court abused its discretion in determining the amount of restitution ordered. We affirm.

**FACTS**

Tetee Saryee formed Zion Health Care, Inc. (Zion) in 2008 to provide personal-care-assistant (PCA) services to patients. Zion served some Medicaid-eligible clients, and billed the Minnesota Department of Human Services (DHS) for reimbursement.

To become eligible to receive reimbursement from DHS, appellant was required to attend a three-day training, where she learned about reporting and service requirements. During that training, appellant was informed that DHS requires all PCAs to be supervised by a qualified professional (QP).[2] Zion enrolled with DHS as a PCA Choice Provider and became eligible to receive reimbursements from DHS for providing PCA services.

As part of its enrollment application to DHS, Zion reported the name of the QP it had on staff. In 2009, Zion's original QP left, and it hired a new QP. Zion notified DHS

---

[1] Saryee was charged because she was Zion's sole shareholder and was the sole person on the corporate bank account. The charging documents state her affiliation with Zion, but she was charged and convicted as an individual.

[2] A QP is typically a registered nurse, while PCAs require less training.

about the staffing change, as required.  However, when the second QP left Zion sometime in early 2010, Zion did not hire a new QP and did not notify DHS of this change.

Zion began serving clients in early 2011, approximately one year after its second QP left its employ.[3]  From February 2011 through November 2012, Zion billed DHS $240,904.12[4] for PCA services.  By statute, and in order to be reimbursable, PCA services are required to be supervised by a QP.  Minn. Stat. § 256B.0625, subd. 19c (2010).  Zion did not have a QP on staff during that time.  At trial to a jury before the district court, appellant claimed that Zion borrowed QPs from other PCA companies during the relevant time period and that services for which it billed DHS were supervised, as required by law. The jury rejected that claim and found appellant guilty of aiding and abetting theft by false representation.

The state requested that appellant's sentence include restitution.  At sentencing, the district court ordered that appellant repay all of the money Zion received from DHS, minus amounts paid by Zion to its employees.  The court calculated this amount to be $119,617 and ordered as a part of appellant's sentence that she make restitution in that amount to DHS over a ten-year period.

---

[3] It appears from the record that Zion had no clients for the first several years of its corporate existence.

[4] The record is inconsistent about how much Zion charged DHS.  Appellant claims the amount billed to have been $263,431.87, a witness for the state testified that it was "around $260,000," and exhibits introduced by the state at trial show the amount was $240,904.12. The exact amount appellant charged to DHS does not affect the outcome of this appeal, and we therefore do not resolve the question of the precise amount billed.

On appeal, and for the first time, appellant argues that she did not commit aiding and abetting theft by false representation because she only requested reimbursement for hours that Zion's PCAs worked and never requested reimbursement for QP supervision. Appellant also argues that the district court abused its discretion in calculating the amount of restitution ordered.

## D E C I S I O N

### I.    Statutory definition of "false representation"

Appellant argues she did not commit theft by false representation when she submitted a claim for PCA services that were provided without QP supervision because she did not falsely describe the services she provided. *See* Minn. Stat. § 609.52, subd. 2(a)(3)(iii) (2010)[5] (defining theft by false representation). Specifically, appellant argues that, when she submitted reimbursement for "PCA services," she did not state or imply that the services were supervised by a QP. The state argues that appellant's use of that term did imply that the services were supervised by a QP.

Appellant frames her argument as a sufficiency-of-the-evidence challenge. Where, as here, a sufficiency-of-the-evidence claim involves a question of whether the defendant's conduct meets the statutory definition of an offense, we are presented with a question of

---

[5] The four convictions stemmed from payments made by DHS to Zion from March 2011 until November 2012. The final conviction stemmed from payments made from May 2012 until November 2012. Because the period of behavior began under the 2010 versions of Minn. Stat. § 609.52, subd. 2(a)(3)(iii) and Minn. Stat. § 256B.0625, subd. 19c, and because the relevant portions were unaltered in the 2012 versions of the statutes, we cite to the 2010 versions.

4

statutory interpretation that we review de novo. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013).

> A person commits theft by false representation when that person:
>
>> (3) obtains for the actor or another the possession . . . [of] property . . . by intentionally deceiving the third person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes without limitation: . . .
>>
>> (iii) the preparation or filing of a claim for reimbursement . . . for medical care provided to a recipient of medical assistance under chapter 256B, which intentionally and falsely states the costs of or *actual services* provided by a vendor of medical care.

Minn. Stat. § 609.52, subd. 2(a)(3)(iii) (emphasis added). Chapter 256B relates to "Medical Assistance for Needy Persons," and includes sections regulating PCAs. Minn. Stat. §§ 256B.01-.84 (2010). Chapter 256B describes reimbursable PCA services as services "provided in accordance with a plan, and supervised by a qualified professional." Minn. Stat. § 256B.0625, subd. 19c.

Appellant requested reimbursement from DHS for PCA services. PCA services are regulated in part by Chapter 256B, which describes reimbursable PCA services as certain services supervised by a QP. *Id*. The state introduced evidence at trial that DHS trainings for PCA providers clearly inform attendees that PCAs must be supervised by QPs. In this context, it is clear from the record that both DHS and appellant knew that PCA services was a term used to describe certain services supervised by QPs. Appellant points to nothing in the record on appeal suggesting otherwise. By statute, PCA services must be supervised

5

by a QP in order to be reimbursable by DHS. *Id.* In claiming reimbursement for PCA services, Zion represented that the services were QP supervised. The jury found, and the record supports, an intentional misrepresentation which resulted in DHS paying reimbursement amounts not properly due.

Appellant attempts on appeal to minimize the importance of QP supervision of PCAs, claiming that it is but one of the myriad regulations that PCA providers must follow. However, the fact that QP supervision is required by the statute regulating PCAs, a requirement that is reemphasized in trainings, shows that QP supervision is a central component of properly reimbursable PCA services. Moreover, appellant's position at trial was that Zion had borrowed QP supervision from other companies, not that QP supervision was not a necessary component of every PCA-reimbursement claim. The evidence of record is sufficient to support appellant's conviction of aiding and abetting theft by false representation.

## II. Calculation of restitution

Appellant identifies three claimed errors by the district court in calculating the amount of restitution. First, appellant argues that she should only be required to pay restitution on Zion's profits, and that the district court erred by not subtracting Zion's overhead (taxes, rent, etc.) in computing restitution. Second, appellant argues that DHS did not suffer any losses because Zion only billed DHS for the hours PCAs worked, and not for any hours worked by QPs, and DHS therefore reimbursed Zion only for services actually rendered. Finally, appellant argues that the district court should have made findings of fact to establish DHS's economic losses.

6

The state replies with two arguments. First, it argues that appellant forfeited her right to challenge the restitution order by not bringing a claim within 30 days, as required by statute. Second, it argues that the district court's restitution order was supported by evidence presented at trial.

We review a district court's award of restitution for abuse of discretion. *State v. Andersen*, 871 N.W.2d 910, 913 (Minn. 2015).

## A. 30-day time limit for challenging restitution

Minn. Stat. § 611A.045 states:

> An offender may challenge restitution, but must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later. The hearing request must be made in writing and filed with the court administrator. A defendant may not challenge restitution after the 30-day time period has passed.

Minn. Stat. § 611A.045, subd. 3(b) (2014).

In the past, we have declined "to create an exception that would permit an offender to circumvent his own failure to comply with mandatory procedural requirements" under Minn. Stat. § 611A.045. *State v. Thole*, 614 N.W.2d 231, 236 (Minn. App. 2000).

Here, the state requested restitution on November 10, 2015 and served appellant's attorney with the request on November 16. The district court ordered restitution on November 19, 2015. Appellant did not request a hearing and, even now, has not requested a hearing. She does not claim that the district court lacked the legal authority to make a restitution award. *State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn. 2011) (holding that noncompliance with section 611A.045 at the district court does not preclude appellate

7

challenges to the district court's authority to award restitution). Appellant has not properly challenged restitution.

## B. Calculating amount of restitution

Even if we were to address appellant's challenges to restitution on their merits, her arguments would fail. "The primary purpose of restitution is to restore crime victims to the same financial position they were in before the crime." *State v. Johnson*, 851 N.W.2d 60, 65 (Minn. 2014) (quotation omitted). Minnesota law requires that the district court "grant or deny restitution or partial restitution and . . . state on the record its reasons for its decision on restitution if information relating to restitution has been presented." Minn. Stat. § 611A.04, subd. 1(c) (2014). "The district court has broad discretion concerning matters of restitution as long as a sufficient factual basis underlies its decision regarding the ordered restitution." *Anderson v. State*, 794 N.W.2d 137, 139 (Minn. App. 2011), *review denied* (Minn. Apr. 27, 2011).

Appellant's first argument that the court should have calculated restitution based on Zion's net profits finds no support in law. Restitution is intended to restore crime victims. *Johnson*, 851 N.W.2d at 65. That a criminal enterprise was expensive to run says nothing about restitution properly owed to a victim of the enterprise.

Second, appellant argues that DHS did not suffer any loss because Zion did not bill DHS for anything it did not do. As discussed above, Zion did not provide PCA services as those services are defined and understood, and appellant aided and abetted Zion's receipt of money DHS should not have paid. Aided by appellant, Zion did not provide any reimbursable services to DHS. All money paid to Zion was therefore part of the theft by

8

false representation. The district court did reduce appellant's restitution obligation by amounts paid out-of-pocket by Zion to the individual PCAs. It was not required to reduce that obligation any further.

Finally, appellant argues that the district court did not state the reasons for its decision on the record. But the basis for the district court's restitution order is clear. At trial, the state introduced evidence of the overpayments, and included that same evidence in its request for restitution. That evidence shows that the state overpaid appellant by at least $119,617.18. We see no abuse of the district court's discretion in the restitution component of appellant's sentence.

**Affirmed**.